UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICA FIRST LEGAL FOUNDATION,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>Defendant. | Civil Action No. 22-1427 |

**DECLARATION OF NATASHA HUDGINS**

I, Natasha Hudgins, declare the following to be a true and correct statement of facts:

1)   I am an Attorney-Advisor with the Executive Office for United States Attorneys ("EOUSA"), United States Department of Justice ("DOJ"). I am assigned to EOUSA's Freedom of Information Act/ Privacy Act ("FOIA/PA") Staff (the "Staff"), which is the component within EOUSA designated to administer both the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *amended by* the OPEN Government Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524, and the Privacy Act of 1974 ("PA"), 5 U.S.C. § 552a. In that position, I have several responsibilities including: acting as a liaison with other divisions and offices of the Department of Justice ("DOJ") in responding to access requests as well as FOIA and PA litigation; reviewing FOIA and PA requests for access to records and case files located in this office and 94 United States Attorney's offices ("USAOs") throughout the nation; reviewing correspondence related to FOIA and PA requests; reviewing searches conducted in response to FOIA and PA access requests; identifying the location of records responsive to FOIA and PA requests; and preparing EOUSA's responses to FOIA and PA requests to ensure that determinations to withhold or release responsive records are

in accordance both the FOIA and the PA, as well as with DOJ regulations, *see* 28 C.F.R. §§ 16.3 *et seq.* and §§ 16.40 *et seq.*

2) The Staff processes and reviews both FOIA and PA requests, responds to administrative appeals, and acts as agency counsel in lawsuits challenging its determinations. As an Attorney-Advisor on the Staff, I have access to EOUSA's files, and I have authority to release and/or withhold records requested under the FOIA and PA. I also have authority to explain the rationale for EOUSA's disclosure determinations.

3) Due to the nature of my official duties, I am familiar with the procedures followed by EOUSA in responding to FOIA requests generally as well as the actions that EOUSA has taken in response to the FOIA request submitted by the plaintiff in this case, America First Legal Foundation (hereafter "Plaintiff"). The statements I make hereinafter are based on my review of the official files and records of EOUSA, my own personal knowledge, and information I acquired through the performance of my official duties.

4) The purpose of this declaration is to provide the Court with information regarding Plaintiff's FOIA request to EOUSA and the rationale behind EOUSA's responses. This declaration consists of: (1) general background of the FOIA request at issue and (2) and information supporting the withholding of two documents responsive to plaintiff's FOIA request but withheld from disclosure pursuant to the Freedom of Information Act ('FOIA") 5 U.S.C. § 552 exemptions (b)(5), (b)(6), and (b)(7)(C), in accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert denied*, 415 U.S. 977 (1974).

5) The disposition of the two documents are the only documents where Plaintiff and Defendant could not find a resolution.

**FOIA REQUEST AND EOUSA RESPONSE**

6) Plaintiff submitted a FOIA request to EOUSA on January 25, 2022 via EOUSA's electronic FOIAXpress Public Access Link system. The request sought internal DOJ attorney work product communications concerning the sentencing position for a single third-party criminal defendant. The request seeks internal DOJ deliberation regarding the position provided by the United States Attorneys Office for the District of Minnesota ("USAO") in docket entry 67 ("Doc 67") for United States of America v. Montez Terriel Lee, Jr., No. 20-cr-00168, Doc. 67 (D. Minn.). The third-party, Mr. Lee had not provided authorization or consent to disclose any non-public records that EOUSA may maintain pertaining to him. I respectfully refer the Court to the documents for a true and accurate statement of the contents of the FOIA request, submitted as Exhibit 4 within Plaintiff's complaint. *See* Compl. at 1-2.

7) On February 3, 2022, EOUSA issued its final response denying the request in full, citing exemptions (b)(6) and (b)(7)(C). Because any non-public records concerning the third-party defendant would be categorically exempt from disclosure, EOUSA did not conduct a search for requested records. A copy of EOUSA's response letter is attached submitted as Exhibit 4 within Plaintiff's complaint. *Id.* at 1-3.

8) EOUSA recognized that the third-party subject, Mr. Lee, was a convicted criminal defendant in its decision to not conduct a search. However, EOUSA did not conduct a search because Plaintiff was specifically seeking a narrow set of non-public records regarding Mr. Lee. Plaintiff made it clear that they were not requesting a copy of Doc 67 in the FOIA request, or records that would reflect information that is on the public docket. Plaintiff is seeking the internal attorney work product discussion reflecting how and why DOJ came to its position outlined in Doc 67.

DOJ provided reasoning publicly in Doc 67, but Plaintiff seems to be unsatisfied with the explanation provided.

9) On or about February 14, 2022, Plaintiff submitted an appeal of their request to the DOJ Office of Information Policy ("OIP"). OIP handles the administrative appeals for all Department of Justice Components. I respectfully defer the Court to a copy of Plaintiff's administrative appeal letter submitted as Exhibit 4 within Plaintiff's complaint. *Id*. At 1-4

10) On or about May 23, 2022, OIP provided Plaintiff with an administrative appeal response, affirming EOUSA's original action.

11) EOUSA ultimately conducted a search and made it's final response to Plaintiff on or about February 1, 2023. By that response, EOUSA released 19 pages in full, released 12 pages in part, and withheld 39 pages in full. The remaining pages of potentially responsive records processed were determined to be duplicates or non-responsive records. A copy of the administrative appeal decision is hereto attached as **Exhibit A.**

12) After EOUSA's response to Plaintiff on or about February 1, 2023, Plaintiff and Defendant have conferred and resolved any questions Plaintiff had surrounding the adequacy of the search, and all withholdings except for two documents. The two documents include a draft sentencing memorandum and the request to recommend a variance or departure from the advisory sentencing guidelines. Those documents will be discussed below.

## EOUSA'S WITHHOLDINGS UNDER THE FOIA

### *Exemption (b)(5): Attorney Work Product & Deliberative Process Privilege*

13) The attorney-work product privilege of Exemption 5 protects "inter-agency or intra agency memorandum or letters which would not be available by law to a party other than an

4

agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The attorney work-product privilege is incorporated into Exemption 5 and serves to protect documents and other memoranda prepared by an attorney in contemplation of litigation. The attorney work-product privilege protects and insulates the attorney's preparation in cases that may lead to litigation.

14) The two documents being withheld from disclosure pursuant to the attorney work-product privilege includes a draft sentencing memorandum and the request to recommend a variance or departure from the advisory sentencing guidelines drafted by the AUSAs who were handling the third-party criminal case.

15) The deliberative process privilege of Exemption 5 is meant to "prevent injury to the quality of agency decisions." See *NRLB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975). The bases of the privilege is to (1) encourage open, frank, discussions on matters of policy between subordinates and superiors; (2) protect against premature disclosure of proposed policies before they are actually adopted; and (3) protect against public confusion that might result from disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's actions. The deliberative process privilege protects the decision making processes of agencies.

16) In this case, the deliberative process privilege is asserted to protect from disclosure the draft sentencing memorandum and the request to recommend a variance or departure from the advisory sentencing guidelines. These documents contributed to the analysis of the facts, strategy and legal impressions concerning the details of the prosecution of Plaintiff's criminal prosecution, and in turn the sentencing position submitted to the Court by the USAO.

17) The disclosure of this information would reveal the government attorneys' legal strategies, research, opinion and legal impression of the strength or weakness of the potential

sentencing recommendations that would ultimately be the basis for Doc 67.

18) Disclosure would be detrimental to frank and open discussion among government personnel in the course of carrying out their official duties. Plaintiff is seeking records that are core to the deliberative process privilege as they are seeking pre-decisional records that would disclose the thought process and legal impressions of the USAO personnel working on the third-party criminal case. Allowing Plaintiff to have access to the internal deliberation of USAO personnel would be harmful because it would hinder USAO personnel from effectively and honestly communicating their perspective on potential agency decision due to fear of public consumption and interpretation.

*Exemption (b)(6) and (b)(7)(C): Privacy*

19) Exemption (b)(6) of the FOIA permits the withholding of personnel and medical files and similar files, which if disclosed, would constitute a clearly unwarranted invasion of personal privacy. 5 U.S.C. § 552(b)(6). This exemption has been interpreted by the United States Supreme Court broadly so as to apply to all information pertaining to a particular individual.

20) In order to protect information under Exemption (b)(7), an agency must ensure that the information was compiled for law enforcement purposes. In this instance, the internal information surrounding the sentencing recommendation of the government regarding the third-party defendant were created as part of the defendant's criminal prosecution.

21) Similarly, exemption (b)(7)(C) protects from disclosure "records or information that was compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information…could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

22) EOUSA determined that, as an initial matter, the threshold for Exemption 6 was satisfied because the information withheld applies to a particular person. EOUSA also determined that the threshold for Exemption 7(C) was satisfied because the records in question were created for the purpose of handling a criminal prosecution.

23) EOUSA asserted Exemptions (b)(6) and (b)(7)(C) to protect the non-public information concerning the third-party criminal defendant. The disclosure of information contained in the two contested records could subject the third party to an unwarranted invasion of their personal privacy by leading to efforts of individuals to contact them directly, gain access to their personal information, or subject them to harassment or harm. Further, it could subject the defendant to additional stigma and scrutiny that often results from a criminal conviction.

24) The release of non-public information regarding a specific third-party criminal defendant in law enforcement records constitutes an unwarranted invasion of personal privacy. The information sought includes records that details specifics about the individual defendant that was not made public through "Doc 67" or otherwise noted on the public docket, including information that is in the defendant's presentence investigation report. Plaintiff requested records that would outline the DOJ's reasoning for the sentencing recommendation of this third-party individual outside of the reasoning publicly provided in Doc 67.

25) The attorney work product requested would include more intimate details about the third-party, and Plaintiff outlines the reasoning provided by DOJ within Doc 67 in their FOIA request. There is no additional information to be revealed to the public that would assist in understanding the workings of the federal government by releasing these draft documents.

26) Plaintiff did not have the consent of the third-party defendant for non-public records

regarding their case.

27) Plaintiff did not directly provide a public interest justification to override the privacy interests, however EOUSA interpreted Plaintiff's reasoning behind the FOIA request as a public interest justification which is analyzed in detail below.

28) Plaintiff failed to show how additional insight on the sentencing recommendation for this single third-party defendant would shed light on the activity of the federal government to prove or disprove whether DOJ was "becoming politicized". DOJ provided reasoning for the sentencing recommendation on the public docket. Therefore, the privacy interest outweighs the public interest for the third-party.

29) The EOUSA asserted Exemptions (b)(6) and b(7)(C) to protect third-party individuals and those privacy interests in these two documents.

## ANALYSIS OF PLAINTIFF'S PUBLIC INTEREST JUSTIFICATION

30) EOUSA analyzed Plaintiff's public interest justification submitted in favor of the public interest overriding the privacy interest of the third-party defendant.

31) Plaintiff's main claim was that it wanted to analyze if the DOJ was being politicized. Plaintiff claimed:

> This case, however, belies the Attorney General's pledge, demonstrating instead that the Biden Administration's unlawful, unconstitutional, and morally repugnant commitment to racialism in health care and education has now infected criminal justice. Furthermore, the department's treatment of the arsonist in this case is highly relevant and probative evidence supporting claims that the department's targeting the January 6, 2021, rioters for disproportionately harsh treatment relative to far more violent and destructive leftist rioters who attacked, injured, and killed hundreds of law enforcement personnel; burned and looted cities nationwide causing billions of dollars in damages; desecrated religious buildings; and besieged federal buildings,4 is a result of partisan political animus.

32) In these claims, Plaintiff made several conclusory statements. First, Plaintiff's views on the Biden Administration's views on healthcare and other public matters have no relevance to the FOIA request, or to the analysis of any criminal justice matters concerning DOJ.

33) Second, Plaintiff makes a comparison between the January 6, 2021 ("Jan 6th") defendants and this individual third-party defendant. The January 6th defendants include several individuals who unlawfully infiltrated the U.S. Capitol. The events of January 6, 2021 and the events of the underlying criminal charges against the individual third-party defendant both occurred under the Trump administration. Likewise, the investigations into all of the criminal activity for all of these crimes also began under the Trump administration.

34) Plaintiff does not highlight any major change in the course of these investigations, or other information that would suggest DOJ was acting in a political manner, other than conclusory accusations based on their personal views.

35) Plaintiff does not outline how this singular sentencing recommendation is different from the DOJ's actions in the hundreds of cases resulting from the events of January 6, 2021. Or, alternatively, Plaintiff did not explain how the attorney work product and deliberative discussion among the government attorneys handling one sentencing recommendation would shed light on the activities of the federal government that would outweigh the third-party's privacy interests. The sentencing recommendation relating to the requested third-party defendant mentioned Doc 67 was 144 months – a 12 year sentencing recommendation. Further, within Doc 67, DOJ outlines several cases that have comparable sentencing recommendations for crimes similar to that of Mr. Lee.

36) Frankly, the information and language used by Plaintiff shows that Plaintiff intends

9

to use the non-public deliberative records surrounding this third-party defendant to affirm their own conviction. There was no justifications or reasoning that outlined reasonable arguments as to how the requested information would prove or disprove DOJ was acting in a political manner. Therefore, EOUSA asserted exemptions (b)(6) and (b)(7)(C) over the non-public records involving a third-party criminal case. Exemption (b)(5) was asserted in the two documents at issue because Plaintiff seeking the deliberative attorney work product regarding this third-party criminal case.

37) EOUSA also considered the foreseeable harm standard when making its decision and applying FOIA exemptions. Allowing Plaintiff to access non-public records that reflect internal deliberation regarding a third-party would cause invasions of privacy to the third-party defendant as well as any victims being discussed. Plaintiff specifically sought any internal records from the USAO Victim Witness personnel regarding the USAO's sentencing position. It would subject the third-party defendant and the victim's family to derogatory inferences and public harassment. As noted in the fee waiver portion of Plaintiff's request, Plaintiff is a public education and news media organization that has a far reach because its officials "routinely appear on national television and use social media platforms to disseminate the information it has obtained." Providing non-public law enforcement records concerning a third-party without consent would cause an invasion of privacy and great harm to the third-party subject and other third parties that may appear in the requested records.

38) Under FOIA, federal agencies are required to release any portion of the record that is non-exempt and this is reasonably segregable from the non-exempt material. If non-exempt information contained in the record is inextricably intertwined with exempt information, then reasonable segregation is not possible.

39) During the processing of this request, each page was individually examined line-by-line by members of the Staff to identify non-exempt information which could be reasonably segregated and released.

40) EOUSA has provided Plaintiff with all non-exempt responsive to his FOIA request and properly withheld information pursuant to the exemptions cited above

I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge and belief.

Executed this 31st day of October, 2024.

_____
Natasha Hudgins
Attorney-Advisor,
Freedom of Information/Privacy Act Staff
Executive Office for United States Attorneys