UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICA FIRST LEGAL
FOUNDATION,

                    Plaintiff,

    v.                                          Civil Action No. 22-1427 (RC)

U.S. DEPARTMENT OF JUSTICE,


                    Defendant.

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND IN SUPPORT OF PLAINTIFF'S CROSS MOTION FOR SUMMARY
JUDGMENT**

## Table of Contents

Background ....................................................................................................... *1*

Standard of Review............................................................................................ *4*

Argument ........................................................................................................... *6*

   I.      The Department improperly invoked Exemption 5 ...........................................6

    A.      The government has not carried its burden to show that the deliberative process privilege applies. .........................................................................6

    B.      The Department fails to meet its burden showing that attorney-client privilege or the attorney work product privilege applies. ...........................................11

   II.      Exemptions 6 and 7(C) are inappropriate..........................................................13

   III.      The Department fails to meet the foreseeable harm standard ......................15

    A.      Deliberative Process........................................................................15

    B.      Attorney-Client Privilege and Attorney Work Product .................................16

   IV.      The Presentence Investigation Report is an Agency Record, and it must be released because the Department has not obtained a clarifying order stating that the seal prohibits disclosure under the FOIA. ..........................................................19

   V.      The Department has failed to carry its burden regarding its segregation of exempt material .............................................................................................19

   VI.      The Department has acted in bad faith, causing its affidavit to "lose all trustworthiness."..............................................................................................20

Conclusion.......................................................................................................... *21*

# TABLE OF AUTHORITIES

Page(s)

## CASES

*A.C.L.U. v. U.S. Dep't of Defense,*
   628 F.3d 612 (D.C. Cir. 2011) ................................................................. 6

*Adarand Constructors v. Pena,*
   515 U.S. 200 (1995) ............................................................................. 14

*Allen v. C.I.A.,*
   636 F.2d 1287 (D.C. Cir. 1980) ............................................................. 5

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) ............................................................................. 4

*Blackwell v. F.B.I.,*
   646 F.3d 37 (D.C. Cir. 2011) ............................................................... 13

*Boyd v. Crim. Div. of Dep't of Just.,*
   475 F.3d 381 (D.C. Cir. 2007) ............................................................. 13

*Carson v. Dep't of Just.,*
   631 F.2d 1008 (D.C. Cir. 1980) ........................................................... 19

*City of Waukesha v. EPA,*
   320 F.3d 228 (D.C. Cir. 2003) ............................................................. 12

*Comm. for Freedom of the Press v. Fed. Bureau of Investigation,*
   3 F.4th 350 (D.C. Cir. 2021) ............................................... 7, 16, 16, 17

*Comm. for Freedom of the Press v. United States Customs & Border Prot.,*
   567 F. Supp. 3d 97 (D.D.C. 2021) ..................................... 5, 12, 15, 16

*Council v. U.S. Cust. and Border Patrol,*
   590 F. Supp. 3d 306 (D.D.C. 2022) ..................................................... 16

*Dawson v. Delaware,*
   503 U.S. 159 (1992) ......................................................................... 8, 14

*Herron v. Fannie Mae,*
  861 F.3d 160 (D.C. Cir. 2017) ............................................................................. 12

*Judicial Watch of Florida, Inc. v. U.S. Dep't of Just.,*
  102 F.Supp.2d 6 (D.D.C. 2000) ............................................................................ 8

*Larson v. Dep't of State,*
  565 F.3d 857 (D.C. Cir. 2009) ............................................................................... 5

*Machado Amadis v. United States Dep't of State,*
  971 F.3d 364 (D.C. Cir. 2020) ............................................................................... 5

*Maydak v. U.S. Dep't of Just.,*
  218 F.3d 760 (D.C. Cir. 2000) ............................................................................. 18

*McGehee v. C.I.A.,*
  697 F.2d 1095 (D.C. Cir. 1983) .............................................................. 4, 20, 21

*Morgan v. Dept. of Just.,*
  923 F.2d. 195 (1991) ............................................................................................ 19

*Nat'l Whistleblower Ctr. v. HHS,*
  903 F. Supp. 2d 59 (D.D.C. 2012) ........................................................................ 8

*National Archives and Records Admin. v. Favish,*
  541 U.S. 157 (2004) ...................................................................................... 13, 13

*Nesse v. Pittman,*
  202 F.R.D. 344 (D.D.C. 2001) ............................................................................. 12

*Oglesby v. Dep't of Army,*
  920 F. 2d 57 (D.C. Cir. 1990) ................................................................................ 4

*Protect Democracy Project, Inc. v. Nat'l Sec. Agency,*
  10 F.4th 879 (D.C. Cir. 2021) ........................................................................... 6, 6

*Schlefer v. U.S.,*
  702 F.2d 233 (D.C. Cir. 1983) ............................................................................. 12

*In re Sealed Case,*
  121 F.3d 729 (D.C. Cir. 1997) ............................................................................ 7, 7

*Students for Fair Admissions, Inc. v. Pres. and Fellows of Harvard College,*
    600 U.S. 181 (2023) ................................................................ 14

*In re Subpoena Served Upon Comptroller of Currency, & Sec'y of Bd. of Governors of Fed. Rsrv. Sys.,*
    967 F.2d 630 (D.C. Cir. 1992) ................................................... 8

*Texaco Puerto Rico, Inc. v. Dep't of Consumer Affs.,*
    60 F.3d 867 (1st Cir. 1995) ...................................................... 8

*Ullah v. CIA,*
    435 F. Supp. 3d 177 (D.D.C. 2020) ........................................ 4

*United States v. Lopez,*
    938 F.2d 1293 (D.C. Cir. 1991) ............................................... 9

*WP Co. LLC v. U.S. Dep't of Def.,*
    626 F. Supp. 3d 69 (D.D.C. 2022) .......................................... 5

## **STATUTES**

Title 5 U.S.C. § 552(a)(8)(A)(i)(I) ............................................... 5, 5

Title 5 U.S.C. § 552(b) ................................................................. 5

Title 5 U.S.C. § 552(b)(5) ............................................................ 6

Title 5 U.S.C. § 552(b)(7)(E) ..................................................... 17

Title 18 U.S.C. § 844(i) ................................................................ 1

## **FEDERAL RULES**

Federal Rules of Civil Procedure Rule 56 ................................... 4

## Background

On May 28, 2020, Montez Terriel Lee burned the "Max It Pawn Shop" in Minneapolis, Minnesota. *See* Criminal Complaint at 1, *United States v. Lee*, No. 20-cr-168 (D. Minn. June 11, 2020), ECF No. 1. A video showed him "pouring liquid out from a metal container throughout the pawn store. The video then cuts to outside the pawn shop, which is now on fire. Mr. Lee is shown, now not wearing a shirt, holding his fist up. The man taking the video exclaims, 'Oh, shit—you really did it!'" Position of the United States with Respect to Sentencing at 2, *United States v. Lee*, No. 20-cr-00168 (D. Minn. Nov. 8, 2020), ECF No. 67 (the "Sentencing Memorandum").[1] In another video, Mr. Lee exclaims, "'F*** this place. We're gonna burn this b**ch down.'" *Id.* (alteration not in Sentencing Memorandum). In another video, taken after the first two, Mr. Lee is seen joking about which local businesses he was going to "hit" next. *Id.*

Mr. Lee's arson killed a man named Oscar Stewart. *Id.* at 3.

On June 11, 2020, the United States Attorney for the District of Minnesota charged Mr. Lee with arson, in violation of 18 U.S.C. § 844(i). *See* Criminal Complaint, *supra*, at 1. On July 22, 2021, Mr. Lee pled guilty to one count of arson, in violation of 18 U.S.C. § 844(i), which carries statutory penalties of a maximum term of imprisonment of 20 years, a mandatory minimum term of imprisonment of 5 years, and other penalties. Plea Agreement and Sentencing Stipulations at 1–2,

---

[1] The Plaintiff filed the Sentencing Memorandum as Complaint Exhibit 1, ECF No. 1-1.

*United States v. Lee*, No. 20-cr-00168 (D. Minn. July 22, 2021), ECF No. 55. In his plea agreement, Mr. Lee acknowledged that the court would consider the United States Sentencing Guidelines in determining the appropriate sentence, and he stipulated that the United States' view of the appropriate sentencing calculations would be 210–240 months' imprisonment. *Id.* at 3–4.

On November 4, 2021, Acting United States Attorney W. Anders Folk and Assistant U.S. Attorney Thomas Calhoun-Lopez of the U.S. Department of Justice filed a memorandum recommending a downward variance in Mr. Lee's sentencing because "[Mr. Lee] credibly states that he was in the streets to protest unlawful police violence against black men." Sentencing Memorandum at 7. The memorandum states:

> [M]any people in those days [were] looking only to exploit the chaos and disorder in the interests of personal gain or random violence. There appear also to have been many people who felt angry, frustrated, and disenfranchised and who were attempting, in many cases in an unacceptably reckless and dangerous manner, to give voice to those feelings. Mr. Lee appears to be squarely in this latter category.

*Id.* While they acknowledged that the death of Mr. Stewart was "precisely [the] reason [why] the applicable Guideline provision for arson cross-references the homicide provisions, including the guidance regarding 'felony murder,'" *id.* at 5, the Department's attorneys stated that Mr. Lee was simply "caught up in the fury of the mob after living as a black man watching his peers suffer at the hands of police." *Id.* at 7. Accordingly, the Department's attorneys asked the court to sentence Mr. Lee "to a term of imprisonment of 144 months." *Id.* at 13. On January 14, 2022, Mr. Lee was sentenced "to be imprisoned for a total term of … 120 months." *See* Judgement in a

Criminal Case at 2, *United States v. Lee*, No. 20-cr-00168 (D. Minn. Jan. 19, 2022), ECF No. 89.

On January 25, 2022, Plaintiff America First Legal Foundation ("AFL") filed a Freedom of Information Act ("FOIA") request with the Executive Office for United States Attorneys ("EOUSA"), a component of Defendant U.S. Department of Justice, seeking records in the possession of Folk and Calhoun-Lopez relating to the Sentencing Memorandum they filed. Complaint Exhibit 2, ECF No. 1-2. To justify the public interest in disclosure of the requested records, AFL's FOIA request cited the Biden Department of Justice's "unlawful, unconstitutional, and morally repugnant commitment to racialism in health care[,] education[, and] criminal justice." *Id*. at 4. AFL further stated:

> [T]he [D]epartment's treatment of the arsonist in this case is highly relevant and probative evidence supporting claims that the [D]epartment's targeting the January 6, 2021, rioters for disproportionately harsh treatment relative to far more violent and destructive leftist rioters who attacked, injured, and killed hundreds of law enforcement personnel; burned and looted cities nationwide causing billions of dollars in damages; desecrated religious buildings; and besieged federal buildings, is a result of partisan political animus.

*Id*. On February 3, 2022, the EOUSA responded, denying the request in full (and refusing to conduct a search) under exemptions (b)(6) and (b)(7)(C). Complaint Exhibit 3, ECF No. 1-3. On February 14, 2022, AFL appealed the EOUSA's denial to the Department's Office of Information Policy. Complaint Exhibit 4, ECF No. 1-4. On May 20, 2022, AFL filed suit against the U.S. Department of Justice, further citing letters from Senator Josh Hawley and Congressman Chip Roy to Attorney General Merrick Garland regarding the strong public interest in shining more light on the

sentencing determination in *United States v. Lee. See* Complaint ¶ 16, ECF No. 1. On May 23, 2022, the Department's Office of Information Policy upheld the EOUSA's denial.

Once in litigation, the EOUSA re-evaluated its position, conducted a search, and released records. Now, only two remaining documents are at issue: the request to recommend a downward variance (labeled WIF Doc 2 in the *Vaughn* index) and the pre-sentence investigation report (labeled WIF Doc 4 in the *Vaughn* index).

## Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, a Court shall grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* A fact is "material" when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"FOIA cases are typically and appropriately decided on motions for summary judgment." *Ullah v. CIA*, 435 F. Supp. 3d 177, 181 (D.D.C. 2020) (cleaned up). The agency must show "that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. Dep't of Army*, 920 F. 2d 57, 68 (D.C. Cir. 1990). On the other hand, "evidence of bad faith [can be] enough to vitiate the credit to which agency affidavits are ordinarily entitled." *McGehee v. C.I.A.*, 697 F.2d 1095, 1113 (D.C. Cir. 1983).

"To withhold a responsive record, an agency must show both that the record falls within a FOIA exemption, 5 U.S.C. § 552(b), and that the agency 'reasonably foresees that disclosure would harm an interest protected by [the] exemption.'" *Machado Amadis v. United States Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020) (alteration in original) (quoting 5 U.S.C. § 552(a)(8)(A)(i)(I)). To carry this burden, the agency typically "submit[s] affidavits that 'describe the justifications for nondisclosure with reasonably significant detail, demonstrate that the information withheld logically falls within the claimed exemption, and [is] not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *WP Co. LLC v. U.S. Dep't of Def.*, 626 F. Supp. 3d 69, 77 (D.D.C. 2022) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)). Indeed, "[w]here there is evidence of bad faith on the part of the agency, the representations of the agency lose all trustworthiness." *Allen v. C.I.A.*, 636 F.2d 1287, 1298 (D.C. Cir. 1980) (overruled on other grounds).

"Whether an exemption applies, however, does not end the matter." *Reps. Comm. for Freedom of the Press v. United States Customs & Border Prot.*, 567 F. Supp. 3d 97, 109 (D.D.C. 2021). "Under a 2016 amendment to FOIA, an agency may not withhold exempt materials unless the agency 'reasonably foresees that disclosure would harm an interest protected by' a FOIA exemption." *Id.* (quoting 5 U.S.C. § 552(a)(8)(A)(i)(I)).

## Argument

### I.  The Department improperly invoked Exemption 5.

"FOIA requires federal agencies to disclose to the public records requested under the Act unless the records fall into one of nine statutory exemptions." *Protect Democracy Project, Inc. v. Nat'l Sec. Agency*, 10 F.4th 879, 885 (D.C. Cir. 2021). "An agency withholding responsive documents from a FOIA release bears the burden of proving the applicability of claimed exemptions." *A.C.L.U. v. U.S. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011).

Explaining Exemption 5, the D.C. Circuit has stated that "this exemption incorporates the privileges available to Government agencies in civil litigation. In addition to the attorney-client privilege and the attorney work product doctrine, the incorporated privileges include those recognized as components of executive privilege, including the deliberative process privilege and presidential communications privilege." *Protect Democracy*, 10 F.4th at 885 (cleaned up). Here, the Department argues that the deliberative process privilege and the attorney-client privilege protect WIF Doc 2 such that it can be withheld in full. This is incorrect.

### A.  The government has not carried its burden to show that the deliberative process privilege applies.

With respect to the deliberative process privilege, "Exemption 5 … allows the government to withhold 'inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency.'" *Protect Democracy*, 10 F.4th at 885 (quoting 5 U.S.C. § 552(b)(5)). Here, the Department cites the privilege of the deliberative process as the basis for its

Exemption 5 withholdings. D.'s Mem. at 6, ECF No. 25-1. Thus, when considering whether or not the government has met its burden of availing itself of the exemption, the Court must apply the relevant standards for the privilege claimed.

"Two requirements are essential to the deliberative process privilege: the material must be pre-decisional, and it must be deliberative." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997). Moreover, "the deliberative process privilege is a qualified privilege" that must be "made flexibly on a case-by-case, ad hoc basis" "each time" it is "asserted" *Id.* Here, WIF Doc 2 is neither pre-decisional nor deliberative. Instead, as a formal request to recommend a variance from the sentencing guidelines, it states the final position of the AUSA handling the case and thus constitutes a final agency action. Likewise, the Department gives no indication that it is deliberative, in that it reflects the "give and take" of agency decisionmaking. *Reps. Comm. for Freedom of the Press v. F.B.I.*, 3 F.4th 350, 364 (D.C. Cir. 2021) ("[T]he key to whether a document is deliberative is whether it is part of the 'give-and-take' of the 'consultative process.'"). Here, there is no indication that the document withheld is part of that give-and-take.

The deliberative process privilege originated under common law, and it is from common law that it derives its contours and limits. *See In Re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997). The privilege is qualified and can be overcome with a showing of government misconduct. Indeed, "where there is reason to believe the documents sought may shed light on government misconduct, 'the privilege is routinely denied,' on the grounds that shielding internal government deliberations in

7

this context does not serve 'the public's interest in honest, effective government.'" *Id.* at 738 (quoting *Texaco Puerto Rico, Inc. v. Dep't of Consumer Affs.*, 60 F.3d 867, 885 (1st Cir. 1995)). "The privilege may be overridden where necessary to ... shed light on alleged government malfeasance." *In re Subpoena Served Upon Comptroller of Currency, & Sec'y of Bd. of Governors of Fed. Rsrv. Sys.*, 967 F.2d 630, 634 (D.C. Cir. 1992) (internal quotations omitted). Courts in this district have recognized that this doctrine can apply in FOIA cases. *See, e.g.*, *Nat'l Whistleblower Ctr. v. HHS*, 903 F. Supp. 2d 59, 67 (D.D.C. 2012) ("[T]he Court here finds that the government-misconduct exception may be invoked to overcome the deliberative-process privilege in a FOIA suit."); *Judicial Watch of Florida, Inc. v. U.S. Dep't of Just.*, 102 F.Supp.2d 6, 15 (D.D.C. 2000).

In seeking a departure from the Guidelines, the Sentencing Memorandum explicitly references Mr. Lee's supposed ideology[2] and race[3]—both factors that may not be considered. *See* U.S.S.G. Ch. ONE, Pt. A, Subpt. 1 ("When a court finds an atypical case ... the court may consider whether a departure is warranted. [However,] Section 5H1.10 (Race, Sex, National Origin, Creed, Religion, and Socio-Economic Status) [of the Sentencing Guidelines Manual] ... list[s] several factors that the court cannot take into account as grounds for departure."); *see also Dawson v. Delaware*, 503 U.S. 159, 168 (1992) (The First Amendment "prevents [the prosecution] from

---

[2] "Mr. Lee credibly states that he was in the streets to protest unlawful police violence against black men." Sentencing Memorandum at 7.

[3] "Mr. Lee, appropriately, ... was 'caught up in the fury of the mob after living as a black man watching his peers suffer at the hands of police.'" Sentencing Memorandum at 7.

employing evidence of a defendant's abstract beliefs at a sentencing hearing when those beliefs have no bearing on the issue being tried.").

The Sentencing Memorandum makes clear that the overriding reasons for the relevant decision-makers who took the prohibited step of advocating a departure in this case are Mr. Lee's race and their own support for (and socio-political justification of) the rioting, violence, and lawbreaking that devastated Minneapolis in 2020; support and justification that they apparently imputed to Mr. Lee. *See United States v. Lopez*, 938 F.2d 1293, 1297 (D.C. Cir. 1991) ("the sentencing judge correctly found that section 5H1.10 [of the Sentencing Guidelines Manual] precluded departure from the Guidelines sentence on the basis of [a factor listed in 5H1.10]"). In so doing, the Department has engaged in the exact kind of misconduct that precludes it from availing itself of the deliberative process privilege. Reading the Sentencing Memorandum, it seems that a white counter-protestor at the same event, opposing the Department's cause, who had engaged in the same act (an arson that took a life), would not have gotten the same treatment. Without disclosure of the requested records, it is unclear how the Department chooses when it seeks a downward variance from the Sentencing Guidelines for a criminal defendant.

Indeed, the Department has sought far longer sentences for crimes allegedly committed during the unrest at the Capitol on January 6, 2021. For example, the Department sought sentences of 33 years for Enrique Tarrio and Joseph Biggs, 30 years and Zachary Rehl, 27 years for Ethan Nordean, and 20 years for Dominic Pezzola. Government's Sentencing Memorandum at 2, *United States v. Nordean et*

*al.*, No. 1:21-cr-00175 (D.D.C. Aug. 17, 2023), ECF No. 855. The Department did not seek a downward variance for any of them on account of their motivation to protest what they believed were serious injustices in the United States. Instead, the Department urged the court "to depart upwards from each defendant's Guidelines range." *Id.* at 70. Reading the two sentencing memorandums side by side shows a clear difference in approach driven by factors unknown to the public. Further, none of those men killed anyone, unlike Mr. Lee, who received comparatively favorable treatment.

In another instance, the Department sought 10 months' incarceration for the "J6 praying grandma," Rebecca Lavrenz. *See* Government's Sentencing Memorandum, *United States v. Lavrenz*, No. 23-cr-66 (D.D.C. Aug. 5, 2024), ECF No. 91 at 1. In that sentencing memorandum, the Department argued that their "recommendation is justified, in part, because Lavrenz … has been one of the loudest public voices calling the prosecution of January 6 rioters a corrupt exercise." *Id*. The Department went on to argue that "her unrepentant promotion of the riot is powerful evidence that she continues to pose a threat to future acts of political violence like that which engulfed the nation on January 6." *Id*. In contrast, the Department's Sentencing Memorandum for Mr. Lee never faults him for failing to turn away from the cause that led him to break the law (protesting in favor of social justice under the banner of Black Lives Matter). Instead, the Department credits Mr. Lee for stating that he "could have demonstrated in a different way." Sentencing Memorandum at 7. The Department did not seek a downward variance for Ms. Lavrenz on account of her

political or socio-economic motivations. Instead, the Department urged the court to "vary upward by two levels [because] the January 6 riot was a violent attack that threatened the lives of legislators …. Every rioter, whether or not they personally engaged in violence or personally threatened violence, contributed to this harm." Government's Sentencing Memorandum, *United States v. Lavrenz*, *supra*, at 17. No such argument was made for an upward variance for Mr. Lee, despite his commission of an arson, resulting in a death, during a series of politically motivated riots. The double standard is clear.

Sentencing based on race and ideology is patently wrong, and a departure from the Sentencing Guidelines must not be based on those factors. *See* SENT'G GUIDELINES MANUAL §5H1.10 (U.S. SENT'G COMM'N 2021). Regardless, the Department advocated for just that in these cases. The deliberative process privilege was never intended to shield government misconduct from public view, and courts in this District have denied the privilege when agencies have attempted to use it for that purpose. It should be denied here.

### B. The Department fails to meet its burden showing that attorney-client privilege or the attorney work product privilege applies.

As a preliminary matter, the Department has failed to provide any evidence in support of its argument that Exemption 5 applies to WIF Doc. 4. While the government's brief argues that the document is subject to the attorney-client privilege, the declarations on which it relies instead asserts an entirely different privilege — the attorney work product privilege.

Given this inconsistency, it is not entirely clear whether the Department meant to assert the attorney-client privilege or the attorney work product privilege, which are distinct privileges and have distinct elements. *See Nesse v. Pittman*, 202 F.R.D. 344, 348 (D.D.C. 2001) ("the work-product and attorney-client privileges operate independently of each other"). "The Agency bears the burden of demonstrating that [documents] ... fall within the attorney-client privilege." *Schlefer v. U.S.*, 702 F.2d 233, 237 (D.C. Cir. 1983). The Department's brief devotes only two paragraphs to its discussion of the privilege, in which it provides no information about the document withheld, nor does it explain the harm that would flow from releasing the document. *See* D.'s Mem. at 6, ECF No. 25-1. Indeed, the document seems an odd fit for the attorney-client privilege.

The Department's declarant instead asserts the attorney work product privilege, which is never asserted in the Department's opening brief, and is therefore forfeited. *See, e.g., Herron v. Fannie Ma*e, 861 F.3d 160, 165 (D.C. Cir. 2017) ("[S]he forfeited her argument ... by failing to adequately raise it in her opening brief"); *City of Waukesha v. EPA*, 320 F.3d 228, 250 n.22 (D.C. Cir. 2003). Beyond the fact that the argument is never raised in the Department's opening brief, the argument is also fruitless because the Department fails to put forward a credible argument that release would harm an interest protected by the FOIA exemption. *Reps. Comm. for Freedom of the Press v. United States Customs & Border Prot.*, 567 F. Supp. 3d 97, 109 (D.D.C. 2021) ("Whether an exemption applies, however, does not end the matter. Under a 2016 amendment to FOIA, an agency may not withhold exempt materials

unless the agency reasonably foresees that disclosure would harm an interest protected by a FOIA exemption.") (cleaned up).

## II. Exemptions 6 and 7(C) are inappropriate.

Both Exemption 6 and Exemption 7(C) turn on the balancing of public interests in disclosure against the private interest in privacy. *See National Archives and Records Admin. v. Favish*, 541 U.S. 157, 172 (2004). To meet their burden, a FOIA requester must show that "that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake ... [and] the information is likely to advance that interest." *Boyd v. Crim. Div. of Dep't of Just.*, 475 F.3d 381, 387 (D.C. Cir. 2007) (quoting *Favish*, 541 U.S. at 172.). "[T]he justification most likely to satisfy Exemption 7(C)'s public interest requirement is that the information is necessary to show the investigative agency or other responsible officials acted negligently or otherwise improperly in the performance of their duties." *Favish*, 541 U.S. at 173. The D.C. Circuit, interpreting *Favish*, has stated that to defeat a 7(C) exemption under *Favish*, "the requester must at a minimum 'produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred.'" *Blackwell v. F.B.I.*, 646 F.3d 37, 41 (D.C. Cir. 2011) (quoting *Favish*, 541 U.S. at 174).

Here, the evidence showing government misconduct is incontrovertible, and it takes the form of the Sentencing Memorandum filed by the Department itself. The Department credits Mr. Lee for being "caught up in the fury of the mob after living as a black man watching his peers suffer at the hands of police," and goes on to quote

Dr. Martin Luther King, Jr., for the proposition that "a riot is the language of the unheard." Sentencing Memorandum at 7–8.

The fact that Mr. Lee's race and the viewpoint he supposedly chose to express while committing arson, and killing a man, factored into the position of the Department at sentencing is serious misconduct, and shining light on that goes toward remedying this misconduct. Indeed, remedying racial favoritism is a compelling state interest, as numerous decisions of the Supreme Court have made clear. *See, e.g.*, *Students for Fair Admissions, Inc. v. Pres. and Fellows of Harvard College*, 600 U.S. 181, 206 (2023) ("Eliminating racial discrimination means eliminating all of it."); *Adarand Constructors v. Pena*, 515 U.S. 200, 216 (1995) ("a classification based upon the race of the participants ... must be viewed in light of the historical fact that the central purpose of the Fourteenth Amendment was to eliminate racial discrimination emanating from official sources") (internal citations omitted); *see also Dawson*, 503 U.S. at 160 (holding that the First and Fourteenth Amendments prohibit the introduction in a capital sentencing proceeding of the defendant's membership in a race-based prison gang, where the evidence had no relevance to the issues being decided in the proceeding).

The Defendant also failed to explain how the request to recommend a variance or departure from the sentencing guidelines and the Presentence Investigation Report contains private information not already revealed in the Sentencing Memorandum or other public filings. The Defendant's declaration does not explain how public disclosure would actually "lead[] to efforts of individuals to contact [the

third-party criminal defendant] directly, gain access to their personal information, or subject them to harassment or harm." ECF No. 25-3. The "agency's boilerplate explanation," 567 F. Supp. 3d at 124, fails to explain the risks posed by disclosure.

On the other hand, the requested records would significantly further the public's understanding of government operations. While the Sentencing Memorandum cites the withheld Presentence Investigation Report (WIF Doc 4) and purportedly articulates the Department's true and complete rationale for recommending a downward variance from the Sentencing Guidelines, there is significant public interest in disclosing whether the withheld request to recommend that variance (WIF Doc 2) was grounded in additional impropriety and whether the Sentencing Memorandum merely cherry-picked mitigating portions of the Presentence Investigation Report rather than the aggravating ones, to support a pre-determined outcome motivated by improper considerations. The requested records may also reveal why one political motivation deserved a downward variance, while another deserved an upward variance. *Compare* Sentencing Memorandum at 7–8 *with* Government's Sentencing Memorandum, *United States v. Lavrenz*, *supra*, at 17. Accordingly, the public interest in disclosure easily overcomes what little privacy interest there is in withholding the records.

### III. The Department fails to meet the foreseeable harm standard

#### A. Deliberative Process

"For withholdings based on the deliberative process privilege, it is not enough to explain how disclosure 'could' impair internal deliberations; the agency must concretely explain how disclosure 'would' impair such deliberations." *Am. Immig.*

*Council v. U.S. Cust. and Border Patrol*, 590 F. Supp. 3d 306, 333 (D.D.C. 2022) (quoting *Reps. Comm. for Freedom of the Press v. F.B.I.*, 3 F.4th 350, 369–70 (D.C. Cir. 2021)). The *Vaughn* index only asserts that "[h]arm would be caused under deliberative process to AUSAs in carrying out DOJ's mission and government employee's ability to have frank discussions on pre-decisional matters." *See Vaughn* Index at 10, ECF 25-5.

The agency declaration does no better, asserting that "[d]isclosure would be detrimental to frank and open discussion among government personnel in the course of carrying out their official duties .... Allowing Plaintiff to have access to the internal deliberation of USAO personnel would be harmful because it would hinder USAO personnel from effectively and honestly communicating their perspective on potential agency decision due to fear of public consumption and interpretation." ECF No. 25-3 at 6. If this boilerplate explanation is concrete enough, it is hard to imagine an explanation that is not; any agency can assert that they fear the public knowing what they were up to at any time. The FOIA does not privilege a bare desire to keep secrets from the public out of fear of embarrassment in the public eye. Indeed, the D.C. Circuit has ruled that "agencies cannot rely on ... fear of embarrassment to withhold information." *Reps. Comm. for Freedom of the Press v. Fed. Bureau of Investigation*, 3 F.4th 350, 369 (D.C. Cir. 2021) (internal quotation omitted).

## B. Attorney-Client Privilege and Attorney Work Product

When agencies choose to be vague about the harm that would result from disclosing records allegedly covered by the attorney-client privilege, the D.C. Circuit has declined to uphold the privilege. *Reps. Comm. for Freedom of the Press v. United*

*States Customs & Border Prot.*, 567 F. Supp. 3d 97, 124 (D.D.C. 2021). In that case, the agency provided only a "boilerplate explanation and the *Vaughn* Index," which led the court to find that the agency "ha[d] not shown a risk of foreseeable harm from disclosing these attorney-client communications" and ultimately to order disclosure of the material. *Id.*

Here, the Department's declarant provided only a boilerplate explanation of the attorney work product privilege and a *Vaughn* index without adequately addressing the specific harms that would result from disclosure. The *Vaughn* index attempts to explain the harm that would come from release, stating that "[r]elease would cause harm under attorney work product privilege because it would publicly reveal the agencies [sic] strategy for criminal investigations, thereby harming the ability of federal agencies to carry out the agency mission." *See Vaughn* Index at 10.

However, that is a harm cognizable under a different FOIA exemption (5 U.S.C. § 552(b)(7)(E)), one the Department chose not to assert. To carry its burden, the agency must assert how the disclosure would undermine the interest sought to be advanced by the exemption it invokes. *Reps. Comm. for Freedom of the Press v. Fed. Bureau of Investigation*, 3 F.4th 350, 372 (D.C. Cir. 2021) ("The agency must specifically and thoughtfully determine whether it reasonably foresees that disclosure of each particular record would harm an interest protected by the exemption.") (cleaned up). Further, the agency's good faith in asserting this harm is undermined by the fact that it chose not to invoke the relevant FOIA exemption ((b)(7)(E)). Nor can the agency reserve that argument for later; the agency must

assert all its exemptions at once. *See Maydak v. U.S. Dep't of Just.*, 218 F.3d 760, 768 (D.C. Cir. 2000).

Nowhere in the relevant sections of the *Vaughn* index does the agency assert the specific harm that would flow from releasing documents allegedly subject to the work product privilege. Nowhere in the relevant sections of the *Vaughn* index does the agency even mention the attorney-client privilege, nor does it identify any harm flowing from releasing documents allegedly subject to that privilege.

The Defendant's boilerplate invocation of the attorney work product privilege (with an inapplicable source of harm) is insufficient. *See Reps. Comm. for Freedom of the Press v. Fed. Bureau of Investigation*, 3 F.4th 350, 370 (D.C. Cir. 2021) ("The agency's broad assertion of foreseeable harm from release of the records under its control was contained in just two umbrella paragraphs .... But the assertion of harm in those umbrella paragraphs is wholly generalized and conclusory, just mouthing the generic rationale for the deliberative process privilege itself.") (cleaned up).

The agency clearly opposes disclosure, but it can't keep its arguments straight as to why. The brief argues for attorney-client privilege, but the Department's *Vaughn* index and Declaration only mention attorney work product privilege, and the harm that would allegedly come from releasing the two documents stems from a FOIA exemption that the Department chose not to invoke. The only throughline from the Department's confused mess of arguments is that the Department opposes disclosure. That makes sense, as the records will likely embarrass the Department further. However, that is not enough to defeat the FOIA's strong interest in disclosure.

18

## IV. The Presentence Investigation Report is an Agency Record, and it must be released because the Department has not obtained a clarifying order stating that the seal prohibits disclosure under the FOIA.

First, the Department argues that the Presentence Investigation Report (WIF Doc 4) is not an agency record. *Vaughn* Index at 11. In the D.C. Circuit, presentence reports are agency records because they are under the control of the Parole Commission, which is part of the Department of Justice. *See Carson v. Dep't of Just.*, 631 F.2d 1008, 1009 (D.C. Cir. 1980) ("the presentence report is an agency record within the meaning of the FOIA."). This matter cannot be disputed in this Court; the Circuit has already ruled upon it.

Next, the Department argues that the Presentence Investigation Report cannot be disclosed because it is sealed by another court. However, the Department has not provided the Sealing Order that would allow this Court to determine whether that is true, and it has declined to seek and provide a clarifying order, as required by the D.C. Circuit's holding in *Morgan v. Dept. of Just.*, 923 F.2d. 195, 198 (1991). The withholding is improper because the Department has not provided evidence on which its withholding can be upheld.

## V. The Department has failed to carry its burden regarding its segregation of exempt material

The Department asserts that it has released all reasonably segregable material, and states that agencies are "entitled to a presumption that they complied with the obligation to disclose reasonably segregable material. *See* ECF No. 25-1 at 12. This may normally be true, but when an agency acts in bad faith, its statements (including its affidavits) are no longer entitled to a presumption that they are

trustworthy. See *McGehee v. CIA*, 697 F.2d 1095, 1113 (D.C. Cir. 1983). As explained in Section VI below, the agency has engaged in just such an example of bad faith, and thus is no longer entitled to the presumption that it complied with the law.

**VI. The Department has acted in bad faith, causing its affidavit to "lose all trustworthiness."**

AFL first submitted its FOIA request on January 25, 2022 (ECF No. 1-2), and EOUSA denied it in full on February 3, 2022, citing Exemptions (b)(6) and (b)(7)(C). ECF No. 1-3. AFL then appealed that denial on February 14, 2022 (ECF No. 1-4), and the Department affirmed the denial, refusing to conduct a search or release any records. Hudgins Decl. ¶ 6; ECF No. 25-3. AFL filed suit in this Court on May 20, 2022. ECF No. 1.

Months after AFL filed suit, the Department changed its position regarding its duty to conduct a search, and it released some responsive records on February 1, 2023. ECF No. 25-3 at 4. The records did not change in the interim; if they were subject to FOIA exemptions before AFL filed suit, they remained subject to the exemptions after. If, on the other hand, they were releasable after AFL filed suit, they were also releasable before. The Department's sudden change in position suggests that it did not wish to defend its prior untenable position before this Court, but it had been willing to repeatedly assert such a position in communications with the Plaintiff, including at the administrative appeal stage. *See* D.'s Unopposed Mot. to Suspend the Briefing Schedule ¶ 1, ECF No. 9 ("[W]hile working on the Defendant's dispositive motion, undersigned counsel instructed the agency to perform a search."). This evidence of bad faith "vitiate[s] the credibility to which agency affidavits are

ordinarily entitled." *McGehee v. CIA*, 697 F.2d 1095, 1113 (D.C. Cir. 1983). Additionally, the agency affidavit is not even consistent with the agency's own brief, which itself conflicts with the *Vaughn* index, and the agency's arguments are left with precious little credibility.

## Conclusion

For the foregoing reasons, America First Legal Foundation respectfully requests that the Defendant's Motion for Summary Judgment be denied in full and the Plaintiff's Motion for Summary Judgment be granted.

Dated:        December 2, 2024

Washington D.C.                Respectfully submitted,


By:  /s/  *Michael Ding*
Michael Ding (D.C. Bar No. 1027252)
Jacob Meckler (D.C. Bar No. 90005210)
Tel: (202) 964-3721
E-mail: Michael.Ding@aflegal.org
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Avenue SE #231
Washington, D.C. 20003

*Counsel for America First Legal Foundation*