UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICA FIRST LEGAL FOUNDATION,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF JUSTICE,<br><br>Defendant. | Civil Action No. 22-1427 (RC) |

**SUPPLEMENTAL DECLARATION OF NATASHA HUDGINS**

I, Natasha Hudgins, declare the following to be a true and correct statement of facts:

1)  I am an Attorney-Advisor with the Executive Office for United States Attorneys ("EOUSA"), United States Department of Justice ("DOJ"). I am assigned to EOUSA's Freedom of Information Act/ Privacy Act ("FOIA/PA") Staff (the "Staff"), which is the component within EOUSA designated to administer both the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *amended by* the OPEN Government Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524, and the Privacy Act of 1974 ("PA"), 5 U.S.C. § 552a. In that position, I have several responsibilities including: acting as a liaison with other divisions and offices of the Department of Justice ("DOJ") in responding to access requests as well as FOIA and PA litigation; reviewing FOIA and PA requests for access to records and case files located in this office and 94 United States Attorney's offices ("USAOs") throughout the nation; reviewing correspondence related to FOIA and PA requests; reviewing searches conducted in response to FOIA and PA access requests; identifying the location of records responsive to FOIA and PA requests; and preparing EOUSA's responses to FOIA and PA requests to ensure that determinations to withhold or release responsive records

are in accordance both the FOIA and the PA, as well as with DOJ regulations, *see* 28 C.F.R. §§ 16.3 *et seq.* and §§ 16.40 *et seq.*

2) The Staff processes and reviews both FOIA and PA requests, responds to administrative appeals, and acts as agency counsel in lawsuits challenging its determinations. As an Attorney-Advisor on the Staff, I have access to EOUSA's files, and I have authority to release and/or withhold records requested under the FOIA and PA. I also have authority to explain the rationale for EOUSA's disclosure determinations.

3) Due to the nature of my official duties, I am familiar with the procedures followed by EOUSA in responding to FOIA requests generally as well as the actions that EOUSA has taken in response to the FOIA request submitted by the plaintiff in this case, America First Legal Foundation (hereafter "Plaintiff"). The statements I make hereinafter are based on my review of the official files and records of EOUSA, my own personal knowledge, and information I acquired through the performance of my official duties.

4) The purpose of this declaration is to provide the Court with supplemental information regarding Plaintiff's FOIA request to EOUSA and the rationale behind EOUSA's responses. This declaration consists of: (1) information regarding an additional document contested by Plaintiff, (2) and additional information supporting the withholding of two documents responsive to plaintiff's FOIA request but withheld from disclosure pursuant to the Freedom of Information Act ('FOIA") 5 U.S.C. § 552 exemptions (b)(5), (b)(6), and (b)(7)(C), in accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert denied*, 415 U.S. 977 (1974), and (3) information regarding Plaintiff's allegations of misconduct on behalf of the Department.

## THE DOCUMENTS AT ISSUE AND EOUSA'S WITHHOLDINGS UNDER THE FOIA

5) As an initial matter, EOUSA was under the impression that the two documents

being disputed were the draft sentencing memorandum and the draft sentencing memorandum. Prior to filing our initial brief, I asked, through counsel, for Plaintiff to confirm the two records that remained in dispute and they refused. Therefore, I will address the presentence report ("PSR") document in this supplemental declaration, and provide additional details regarding the request to recommend a downward variance from the sentencing guidelines.

6) The request to recommend a section 3553 variance or departure from the advisory sentencing guidelines was withheld in full subject to exemptions 5, 6, and 7(C). The presentence investigation report is a judicial record, or in the alternative withheld in full subject to exemptions 6, 7(C), and a Court Order from the U.S. District Court for the District of Minnesota.

### *Exemption (b)(5): Attorney Work Product & Deliberative Process Privilege*

7) The attorney-work product privilege of Exemption 5 protects "inter-agency or intra agency memorandum or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The attorney work-product privilege is incorporated into Exemption 5 and serves to protect documents and other memoranda prepared by an attorney in contemplation of litigation. The attorney work-product privilege protects and insulates the attorney's preparation in cases that may lead to litigation.

8) The document being withheld from disclosure pursuant to the attorney work-product privilege includes the request to recommend a variance or departure from the advisory sentencing guidelines drafted by the AUSAs who were handling the third-party criminal case.

9) The deliberative process privilege of Exemption 5 is meant to "prevent injury to the quality of agency decisions." See *NRLB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975). The bases of the privilege is to (1) encourage open, frank, discussions on matters of policy between subordinates and superiors; (2) protect against premature disclosure of proposed policies before

they are actually adopted; and (3) protect against public confusion that might result from disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's actions. The deliberative process privilege protects the decision making processes of agencies.

10) In this case, the deliberative process privilege is asserted to protect from disclosure the request to recommend a variance or departure from the advisory sentencing guidelines. This document contributed to the analysis of the facts, strategy and legal impressions concerning the details of the prosecution of the third-party's criminal prosecution, and in turn the sentencing position submitted to the Court by the USAO.

11) The document includes information regarding the AUSA's impression of the serious nature of the charge that resulted in conviction, details of the third-party defendant's history and other details regarding the request to seek a downward variance of the sentencing guidelines.

12) The disclosure of this information would reveal the government attorneys' legal strategies, research, opinion and legal impression of the strength or weakness of the potential sentencing recommendations that would ultimately be the basis for Doc 67.

13) In addition, the request to recommend a section 3553 variance or departure from the advisory sentencing guidelines in the file was not signed by the necessary supervisors to indicate a final agency action.

14) As mentioned in my initial declaration, disclosure would be detrimental to frank and open discussion among government personnel in the course of carrying out their official duties. Plaintiff is seeking records that are core to the deliberative process privilege as they are seeking pre-decisional records that would disclose the thought process and legal impressions of the USAO personnel working on the third-party criminal case. Allowing Plaintiff to have access to the internal deliberation and attorney work product of USAO personnel would be harmful because it

would hinder USAO personnel from effectively and honestly communicating their perspective on potential agency decision due to fear of public consumption and interpretation.

15) In this case Plaintiff has made several claims of DOJ misconduct, and have indicated that they are a news media organization, so it is reasonable for EOUSA to infer that there is significant harm risk in providing this information to Plaintiff due to the likelihood of the spread of inaccurate or incomplete information to the public.

16) In addition, Plaintiff claims that misconduct can override the deliberative process privilege, but fails to show any misconduct on behalf of the government. I will analyze Plaintiff's claims of misconduct in more depth below while analyzing Plaintiff's comparisons of the third-party in the criminal prosecution subject to this FOIA request versus those of some January 6th defendants.

17) Plaintiff also claims that the request for downward variance constituted a final action by the agency because the AUSA "decided" that a downward variance was warranted, but misunderstands what constitutes an agency's final action. If the AUSA spearheading the prosecution of the third-party defendant were able to make a unilateral decision, there would have been no need for a request. The AUSA was required to submit this request to his superiors in the office in order to determine the final outcome. Thus, the document is still pre-decisional. The document was created in the process of litigating a criminal prosecution and squarely fits the attorney work product doctrine as well.

### *Presentence Report*

18) The Presentence report is a judicial record and therefore not an agency record. Agency records are either created or obtained by an agency and under agency control at the time of the FOIA request. See DOJ v. Tax Analysts, 492 U.S. 136, 144-45 (1989). The PSR is controlled

by the U.S. Probation Office, which is part of the Administrative Office of the U.S. Courts – an agency that is a part of the judicial branch of government.

19)     While judicial or congressional records may become agency records, both possession and control are required. The USAO maintained possession, but not control. Control in the FOIA context is determined by "(1) the intent of the document's creator to retain or relinquish control over the record[]; (2) the ability of the agency to use and dispose of the record as it sees fit; (3) the extent to which agency personnel have read or relied upon the document; and (4) the degree to which the document was integrated into the agency's record systems or files.'" Burka v. HHS, 87 F.3d 508, 515 (D.C. Cir. 1996) (quoting Tax Analysts v. DOJ, 845 F.2d 1060, 1069 (D.C. Cir. 1988)).

20)     The judiciary can indicate their intent to maintain control of the document. In this instance, the U.S. Probation Office for the District of Minnesota explicitly states on their website: "Presentence reports are highly confidential documents and will only be released to the defendant by their defense counsel. Reports are disclosed to the defense counsel, the prosecutor, and the court. Absent a court order, no other party is entitled to a copy of the presentence report."[i]

21)     In addition, there is a "Restrictions on Use and Redisclosure of Presentence Investigation Report" paragraph on the PSR document stating in part "…It is the policy of the federal judiciary and the Department of Justice that further redisclosure of the presentence investigation report is prohibited without consent of the sentencing judge."

22)     Further, the USAO-MN is not able to use and dispose of the PSR as they see fit. The PSR has a specific role in the criminal justice process, after conviction. The PSR can be used by an USAO to provide a sentencing recommendation to the court, but the USAO cannot make use or dispose of it as they deem fit. The PSR states that the document is prepared for the judge.

The PSR has specific restrictions on how it can be used and to whom it can be disseminated.

23) U.S. Probation office for the District of Minnesota put explicit limitation to the distribution and dissemination of the Presentence reports, and thus showed the intent of maintaining control of the PSR document.

24) Plaintiff cites *Julian v. Department of Justice*, 806 F.2d 1411 (9th Cir. 1986), *cert. granted*, 107 S. Ct. 3209 (1987). However, Julian had several distinguishing factors from this case. First, Julian occurred before any judicial instructions regarding the use and limitations of the presentence report outside of the Federal Rules of Criminal Procedure ("FRCP"), Rule 32. Further, Julian involved first-party defendants seeking copies of their presentence reports, which is allowed under FRCP, Rule 32. In addition, Julian examined whether exemption 5 of the FOIA could preclude an individual from accessing a copy of their PSR. Exemption 5 is not being claimed here to exempt the PSR at issue in this case.

25) Even if the Court considers the presentence report in this case to be an agency record and subject to the FOIA, it is protected from disclosure due to exemptions 6, 7(C) and the court seal.

26) The Court has sealed Mr. Lee's presentence report as outlined in FRCP, Rule 32. While the rule itself is no longer recognized by this Court to qualify for exemption 3 protection, the rule is clear that the presentence reports should, for all intents and purposes, be excluded from public disclosure.

27) FRCP, Rule 32 explicitly lists the persons who are allowed to access and be privy to the details of the presentence report. The rules allow for the court, prosecutor, defendant, and defense attorney to access the report. All other parties are strictly prohibited from accessing the PSR. Plaintiff does not fall into any of the categories of people allowed by FRCP and the court

sealing order to view Mr. Lee's PSR. Thus, in order for EOUSA to release Mr. Lee's PSR to Plaintiff, a court order from the U.S. District Court for the District of Minnesota would be required.

28) Exemptions (b)(6) and (b)(7)(C) also apply to the PSR and are discussed in more detail below.

### Exemption (b)(6) and (b)(7)(C): Privacy

29) To reiterate from my initial declaration in this matter, Exemption (b)(6) of the FOIA permits the withholding of personnel and medical files and similar files, which if disclosed, would constitute a clearly unwarranted invasion of personal privacy. 5 U.S.C. § 552(b)(6). This exemption has been interpreted by the United States Supreme Court broadly so as to apply to all information pertaining to a particular individual.

30) In order to protect information under Exemption (b)(7), an agency must ensure that the information was compiled for law enforcement purposes. In this instance, the internal information surrounding the sentencing recommendation of the government regarding the third-party defendant were created as part of the defendant's criminal prosecution.

31) Similarly, exemption (b)(7)(C) protects from disclosure "records or information that was compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information…could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

32) As stated in my first declaration, EOUSA determined that, as an initial matter, the threshold for Exemption 6 was satisfied because the information withheld applies to a particular person. EOUSA also determined that the threshold for Exemption 7(C) was satisfied because the records in question were created for the purpose of handling a criminal prosecution.

33) EOUSA asserted Exemptions (b)(6) and (b)(7)(C) to protect the non-public

information concerning the third-party criminal defendant. The disclosure of information contained in the two contested records would likely subject the third party to an unwarranted invasion of their personal privacy by leading to efforts of individuals to contact them directly, gain access to their personal information, or subject them to harassment or harm. Further, it could subject the defendant to additional stigma and scrutiny that often results from a criminal conviction and their beliefs.

34) The release of non-public information regarding a specific third-party criminal defendant in law enforcement records constitutes an unwarranted invasion of personal privacy. The information sought includes records that details specifics about the individual defendant that was not made public through "Doc 67" or otherwise noted on the public docket, including information that is in the defendant's presentence investigation report. Plaintiff requested records that would outline the DOJ's reasoning for the sentencing recommendation of this third-party individual outside of the reasoning publicly provided in Doc 67, and the presentence report that details private intimate details about the defendant.

35) As mentioned, Plaintiff did not have the consent of the third-party defendant for non-public records regarding their case.

36) The PSR is a highly confidential document that includes non-public information about a defendant, including family history and other private intimate details about the defendant in a case. During the presentence investigation, a probation officer conducts extensive interviews and verifies the defendant's "history and background, including childhood experiences, family factors, education, employment, criminal history, finances, physical and mental health, and alcohol or drug use." The PSR summarizes the information gathered during the investigation process as well as any victim impact statements.[ii]

37) Mr. Lee's PSR includes his social security number, place of birth, address, any physical attributes such as tattoos or markings, drivers license or state ID number, and more intimate details. There is also a victim impact portion of the document that outlines the steps of the U.S. Probation office and the officer's analysis.

38) There would be significant harm to the third party defendant if EOUSA were to release his PSR. In addition to the increased risk of harassment, his personal and family information would be exposed to the public. Plaintiff has made clear that they intend to use this information to publish information to the public.

39) Further, there is foreseeable harm to the victim's family to have their loved ones death used in a way that bears no benefit to them, but may force them to relive the tragedy of losing their loved one.

40) The EOUSA asserted Exemptions (b)(6) and b(7)(C) to protect third-party individuals and those privacy interests in the request to recommend a departure from the sentencing guidelines and the PSR.

## ANALYSIS OF PLAINTIFF'S JANUARY 6, 2021 COMPARISONS

41) EOUSA analyzed Plaintiff's public interest justification submitted in favor of the public interest overriding the privacy interest of the third-party defendant.

42) As mentioned, Plaintiff made several conclusory statements in their FOIA request, and continues to do so in their briefing.

43) Plaintiff makes a comparison between the January 6, 2021 ("Jan 6th") defendants and this individual third-party defendant and states that none of the defendants committed murder like Mr. Lee. However this is not a fair comparison. While the individual deaths that occurred on or about January 6th may not have been attributed to single a defendant, approximately 5 people lost their lives as a result the January 6th riot, including at least one Capitol Police Officer.

44) These deaths may have been unintended, and the same is true for Mr. Lee's case. The documents of the case show that he was not aware that anyone was still in the pawn shop that was set on fire. All of the crimes committed that are being compared were inherently dangerous.

45) In addition, the January 6th incident caused approximately $2,881,360 in damage to the U.S. Capitol building and grounds.[iii]

46) Plaintiff claims that DOJ did not "punish" Mr. Lee for his beliefs, but that DOJ punished the January 6th rioters for their beliefs. However, there is no evidence or basis in fact for this claim. Mr. Lee's actions created a risk to others, where one person lost their life. The actions of those participating in the January 6th riot knowingly put hundreds of people's lives in danger, including members of Congress and the Vice President of the United States.

47) In addition, many of those convicted of crimes related to the events on January 6th were convicted of seditious conspiracy and violently attacking police officers. Plaintiff mentions defendants Enrique Tarrio, Joseph Biggs, Zachary Rehl, Ethan Nordean, and Dominic Pezzola.

48) These 5 defendants were convicted of crimes that included seditious conspiracy, attacking or impeding Capitol Police Officers, tampering with a victim, witness, or an informant, and destruction of government property.[iv]

49) It is not hard to see that comparing one criminal defendant who was charged with arson to other criminal defendants charged with multiple crimes makes for an improper comparison. In addition, Mr. Lee accepted responsibility for his actions whereas the defendants listed in Plaintiff's brief did not.

50) Comparing one case to a group of over 1,500 cases is not a fair way to compare DOJ's potential misconduct or bias. If the incidents around January 6th were not a cause that Plaintiff supported, there would be anger/unrest around DOJ not recommending harsh sentences

for anyone using violence against police officers.

51) Plaintiff claims that the government engaged in misconduct by mentioning race in the sentencing recommendation for Mr. Lee. However, the mention of race by the USAO was in summarizing the defendant's words and position. The USAO did not use race or ideology as a factor to influence the sentencing recommendation. *See* Complaint Exhibit 1.

52) As mentioned in my initial declaration, Plaintiff does not highlight any major change in the course of these investigations, or other information that would suggest DOJ was acting in a political manner, other than conclusory accusations based on their personal views.

53) Plaintiff continues to make conclusory statements without sound comparison or justification, and fails to prove that there was any misconduct by the government in any of these cases.

### *Foreseeable Harm and Segrigbility*

54) EOUSA also considered the foreseeable harm standard when making its decision and applying FOIA exemptions. Allowing Plaintiff to access non-public records that reflect internal deliberation, attorney work product and other confidential intimate details regarding a third-party would cause invasions of privacy to the third-party defendant as well as any victims being discussed. Plaintiff specifically sought any internal records from the USAO Victim Witness personnel regarding the USAO's sentencing position. It would subject the third-party defendant and the victim's family to derogatory inferences and public harassment. As noted in the fee waiver portion of Plaintiff's request, Plaintiff is a public education and news media organization that has a far reach because its officials "routinely appear on national television and use social media platforms to disseminate the information it has obtained." Providing non-public law enforcement records concerning a third-party without consent would cause an invasion of privacy and great

harm to the third-party subject and other third parties that may appear in the requested records.

55) Under FOIA, federal agencies are required to release any portion of the record that is non-exempt and this is reasonably segregable from the non-exempt material. If non-exempt information contained in the record is inextricably intertwined with exempt information, then reasonable segregation is not possible.

56) During the processing of this request, each page was individually examined line-by-line by members of the Staff to identify non-exempt information which could be reasonably segregated and released.

57) EOUSA has provided Plaintiff with all non-exempt responsive to his FOIA request and properly withheld information pursuant to the exemptions cited above.

I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge and belief.

Executed this 3rd day of February, 2025.

_____
Natasha Hudgins
Attorney-Advisor,
Freedom of Information/Privacy Act Staff
Executive Office for United States Attorneys

---

[i] https://www.mnp.uscourts.gov/presentence-unit
[ii] https://www.uscourts.gov/about-federal-courts/probation-and-pretrial-services/presentence-investigations
[iii] District of Columbia | 43 Months Since the Jan. 6 Attack on the Capitol
[iv] https://www.justice.gov/opa/pr/proud-boys-leader-sentenced-22-years-prison-seditious-conspiracy-and-other-charges-related