## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| AMERICA FIRST LEGAL FOUNDATION, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 22-1427 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 25, 27 |
| | : | | |
| U.S. DEPARTMENT OF JUSTICE, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

**GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

This action arises out of a Freedom of Information Act ("FOIA") request submitted by America First Legal Foundation ("AFL" or "Plaintiff") to the Department of Justice ("DOJ" or "Defendant"). AFL seeks records related to the sentencing of Montez Terriel Lee, who pled guilty to arson resulting in a death during the 2020 Minneapolis protests. AFL questioned DOJ's sentencing recommendation for Mr. Lee—significantly below the guidelines—as potentially politically motivated, especially in contrast to the treatment of January 6, 2021 rioters. DOJ denied the FOIA request, citing privacy and law enforcement exemptions, prompting AFL to commence this action. After litigation began, DOJ released some documents but withheld parts of two records under FOIA Exemptions 5, 6, and 7(C), citing deliberative process privilege, attorney work-product privilege, and privacy concerns. Both parties filed motions for summary judgment, with DOJ asserting its FOIA compliance and AFL challenging the withholdings and adequacy of DOJ's disclosure. For the foregoing reasons, Defendant's motion for summary

judgment is granted in part and denied in part and Plaintiff's cross-motion for summary judgment is granted in part and denied in part.

## II. FACTUAL BACKGROUND

On January 25, 2022, AFL submitted a FOIA request to the Executive Office for United States Attorneys ("EOUSA"), a component of DOJ. AFL sought records in the possession of Acting U.S. Attorney W. Anders Folk and Assistant U.S. Attorney Thomas Calhoun-Lopez relating to a Sentencing Memorandum filed in the criminal prosecution of Montez Terriel Lee. Compl., Ex. 2, ECF No. 1-2; Decl. of Natasha Hudgins ("Hudgins Decl.") ¶ 6, ECF No. 25-3. Mr. Lee had been prosecuted in connection with an arson committed on May 28, 2020, when he burned the Max It Pawn Shop in Minneapolis, Minnesota. A man named Oscar Stewart died in the fire. Criminal Compl. at 1, *United States v. Lee*, No. 20-cr-168 (D. Minn. June 11, 2020), ECF No. 1; Position of the United States with Respect to Sentencing ("Sentencing Memorandum") at 2–4, *United States v. Lee*, No. 20-cr-168 (D. Minn. Nov. 4, 2021), ECF No. 67. Mr. Lee pled guilty to arson under 18 U.S.C. § 844(i) on July 22, 2021, and he stipulated to a sentencing range of 210–240 months' imprisonment. Plea Agreement and Sentencing Stipulations at 1–4, *United States v. Lee*, No. 20-cr-168 (D. Minn. July 22, 2021), ECF No. 55. On November 4, 2021, DOJ filed a Sentencing Memorandum recommending a downward variance, noting that Mr. Lee had participated in the protest movement following the killing of George Floyd and was "caught up in the fury of the mob." *See* Sentencing Memorandum at 7. The government recommended a sentence of 144 months, and on January 14, 2022, Mr. Lee was sentenced to 120 months. *Id.*; J. in a Criminal Case, *United States v. Lee*, No. 20-cr-168 (D. Minn. Jan. 19, 2022), ECF No. 89.

In its FOIA request, AFL alleged there was strong public interest in DOJ's handling of Mr. Lee's prosecution and sentencing, citing concerns over purportedly unequal treatment of January 6, 2021 rioters versus participants in the 2020 George Floyd protests.  Compl., Ex. 2 at 4.  AFL argued that this disparity raised concerns of political bias in DOJ prosecutorial decisions.  Compl. ¶ 16.  On February 3, 2022, EOUSA denied the FOIA request in full, citing FOIA Exemptions 6 and 7(C), and did not initially conduct a search for requested records.  Hudgins Decl. ¶ 7; Compl., Ex. 3, ECF No. 1-3.  AFL appealed this decision on February 14, 2022 to the Office of Information Policy ("OIP").  Hudgins Decl. ¶ 9; Compl. Ex. 4, ECF No. 1-4.  On May 23, 2022, OIP affirmed EOUSA's denial.  Hudgins Decl. ¶ 10.

On May 20, 2022, AFL filed suit against DOJ.  Compl.  Following the commencement of this action, DOJ re-evaluated its position, conducted a search, and released records.  Hudgins Decl. ¶ 11.  After February 1, 2023, the parties conferred and resolved all disputes regarding the adequacy of the search, leaving only the withholding of information in two documents at issue, which are withheld in full ("WIF"):

- WIF Doc 2: A request to recommend a downward variance

- WIF Doc 4: The Presentence Investigation Report ("PSR")

*See Vaughn* Index at 10–12, ECF No. 25-5.  DOJ withheld portions of these documents under FOIA Exemptions 5, 6, and 7(C).  First, under Exemption 5, DOJ invoked both the deliberative process privilege and the attorney work-product privilege.  These protections were applied to segments of a draft sentencing memorandum and a request recommending a sentencing variance. The documents in question were prepared by the Assistant U.S. Attorneys ("AUSAs") involved in Mr. Lee's case and contained internal legal deliberations.  *See* Hudgins Decl. ¶¶ 13–18; *Vaughn* Index at 10–12.  Second, under Exemption 6, DOJ claims that it withheld non-public

personal information about Mr. Lee contained within the two disputed records.  DOJ argued that

the disclosure of this information could constitute an unwarranted invasion of privacy,

potentially subjecting Mr. Lee to harassment, stigma, or harm.  *See* Hudgins Decl. ¶¶ 22–24;

*Vaughn* Index at 10–12.  Finally, DOJ cited Exemption 7(C), which pertains to records compiled

for law enforcement purposes.  Because the documents are associated with a criminal

prosecution, DOJ asserted that releasing the information—specifically, internal sentencing

recommendations—would result in an unjustified invasion of Mr. Lee's privacy within the

context of a law enforcement proceeding.  *See* Hudgins Decl. ¶¶ 22–24; *Vaughn* Index at 10–12.

DOJ filed a motion for summary judgment, *see* Def.'s Mot. Summ. J. ("Def.'s Mot."),

ECF No. 25, asserting that all its withholdings were proper under FOIA and that all reasonably

segregable non-exempt material had been released to AFL in its disclosures to date.  AFL filed a

cross-motion for summary judgment, *see* Pl.'s Cross-Mot. Summ. J. ("Pl.'s Cross-Mot."), ECF

No. 27, challenging the application of these exemptions and the DOJ's segregability analysis.  In

addition to its opposition to AFL's cross-motion and reply in support of its motion, DOJ

submitted a supplemental declaration of FOIA Officer Natasha Hudgins, reiterating that it had

fulfilled its obligations under FOIA and that summary judgment should be granted in its favor.

Suppl. Decl. of Natasha Hudgins ("Suppl. Hudgins Decl."), ECF No. 32-1.  The motions are now

ripe for review, and the Court will consider the parties' arguments in turn.

### III.  LEGAL STANDARD

FOIA "sets forth a policy of broad disclosure of Government documents in order 'to

ensure an informed citizenry, vital to the functioning of a democratic society.'"  *FBI v.

Abramson*, 456 U.S. 615, 621 (1982) (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S.

214, 242 (1978)).  Accordingly, FOIA "mandates release of properly requested federal agency

records unless the materials fall squarely within one of nine statutory exemptions." *Prop. of the People, Inc. v. Off. of Mgmt. & Budget*, 330 F. Supp. 3d 373, 380 (D.D.C. 2018) (citing *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011); *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001)). "Because disclosure rather than secrecy is the dominant objective of the Act, the statutory exemptions are narrowly construed." *Elec. Priv. Info. Ctr. v. U.S. Drug Enf't Agency*, 192 F. Supp. 3d 92, 101 (D.D.C. 2016) (citation modified).

To prevail on a motion for summary judgment, a movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "FOIA cases typically and appropriately are decided on motions for summary judgment." *Def. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" *U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 755 (1989) (citing 5 U.S.C. § 552(a)(4)(B)). To satisfy its burden, the agency must provide "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of the withheld document to which they apply." *Elec. Priv. Info. Ctr.*, 192 F. Supp. 3d at 103 (citing *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)). "This burden does not shift even when the requester files a cross-motion for summary judgment because the Government ultimately has the onus of proving that the documents are exempt from disclosure, while the burden upon the requester is merely to establish the absence of material factual issues before a summary disposition of the case could permissibly occur." *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*,

436 F. Supp. 3d 90, 99 (D.D.C. 2019) (citation modified). "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure.'" *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)).

## IV.  ANALYSIS

### A.  Presentence Investigation Report (WIF Doc 4)

Before addressing the parties' arguments regarding whether the two documents at issue were properly withheld under FOIA Exemptions 5, 6, and 7(C), the Court will first consider whether one of the contested documents, the PSR (WIF Doc 4), is subject to disclosure under FOIA.  In its *Vaughn* Index, DOJ argues that the PSR is not an agency record, and it therefore cannot be disclosed because it "is controlled by the United States Probation Office ('Probation'), which is part of the Administrative Office of the U.S. Courts and is thereby exempt from any FOIA disclosure requirements."  *See* Combined Reply Supp. of Def.'s Mot. Summ. J. & Opp'n to Pl.'s Cross-Mot. Summ. J. ("Def.'s Reply") at 12, ECF No. 30; *see also Vaughn* Index at 11. AFL argues that WIF Doc 4 qualifies as an agency record under FOIA because it was obtained and controlled by DOJ at the time of the request and PSRs are categorically agency records.  *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 146 (1989) ("[T]he relevant issue is whether an agency covered by the FOIA has 'create[d] or obtaine[d]' the materials sought, not whether the organization from which the documents originated is itself covered by the FOIA."); *see also Carson v. U.S. Dep't of Just.*, 631 F.2d 1008, 1009 (D.C. Cir. 1980) ("[T]he presentence report is an agency record within the meaning of the FOIA.").  AFL applies the four-factor test from *Burka v. U.S. Dep't of Health & Human Servs.*, 87 F.3d 508, 515 (D.C. Cir. 1996), arguing that DOJ's use of the PSR in litigation, including sharing it with a non-case-specific attorney advisor

and citing it in the *Vaughn* Index, shows agency control under factors two through four, despite any disclaimer of the intent to retain it.  Pl.'s Reply Supp. of Pl.'s Mot. Summ. J. ("Pl.'s Reply") at 3–5, ECF No. 33.  AFL further contends that DOJ's reliance on a judicial sealing order to support the document's withholding fails under *Morgan v. U.S. Dep't of Just.*, 923 F.2d 195, 198 (D.C. Cir. 1991) because it neither produced the order nor sought a clarifying one, and thus has not met its burden to justify withholding.  *Id.* at 5.

The Court finds that the PSR is an agency record subject to disclosure under FOIA.  First, the Bureau of Prisons ("BOP"), a part of DOJ, acknowledges that it receives and uses PSRs for multiple purposes post-sentencing.[1]  In fact, once a defendant is sentenced, "a copy of the presentence report is typically transmitted to the Bureau of Prisons, where it may be used in determining a defendant's classification as an inmate, . . . choosing an appropriate treatment program, or deciding eligibility for various privileges."  *U.S. Dep't of Just. v. Julian*, 486 U.S. 1, 5 (1988) (internal citation omitted); *see also* 28 C.F.R. §§ 524.10, 524.12(e).  Additionally, the PSR is transmitted to the U.S. Parole Commission pursuant to 18 U.S.C. § 4205(e) of the Parole Commission and Reorganization Act of 1976 ("Parole Act"), further embedding the document into the framework of executive branch decision-making.  In that context, the Parole Commission must consider the PSR under 18 U.S.C. § 4207(3) and is statutorily obligated to provide the prisoner "reasonable access" to the report at least 30 days before a parole hearing, subject only to limited exemptions for sensitive information under § 4208(b) and (c).

---

[1] It is also the Court's experience that, after Probation shares the PSR with the prosecution and defense, both parties liberally incorporate portions of the PSR in their respective sentencing memoranda filed on the public docket without complaint from Probation.  *See, e.g., United States v. Fairlamb*, No. 21-cr-120, 2023 WL 1438635, *8 (D.D.C. Feb. 1, 2023) ("The record reflects that plea counsel did not object to the PSR and instead incorporated into his sentencing memorandum the government's correct Guidelines calculation, without the official victim enhancement, and a reference to the Guidelines' advisory nature.").

This consistent institutional usage underscores that PSRs fall within FOIA's scope.  The fact that BOP utilizes PSRs for core administrative functions demonstrates that they are not merely judicial records held temporarily; they are substantively and operationally integrated into DOJ's responsibilities.  Here, the PSR was referenced explicitly and repeatedly in the corresponding publicly filed sentencing memorandum.  *See, e.g.,* Sentencing Memorandum at 4 (agreeing with and citing to the PSR, that applying U.S.S.G. § 2A1.2 due to a death results in an adjusted offense level of 38, reduced to 35 for acceptance of responsibility; with seven criminal history points—five from prior convictions and two for committing the offense under a sentence—Mr. Lee falls in Criminal History Category IV, yielding a Guideline range of 235–293 months); *Id.* ("Consistent with his plea agreement, Mr. Lee has objected to the determination by the PSR that Mr. Stewart's death resulted from his offense, and the subsequent application of application of U.S.S.G. § 2A1.2(a)." (citing to PSR A.1–A.2)); *Id*. at 9–12 (analyzing the sentencing factors of 18 U.S.C. § 3553(a), which include repeated references to the PSR when detailing Mr. Lee's criminal history).  Such disclosure on the criminal docket militates against any continued presumption of confidentiality for the PSR in its entirety.  *See Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999) ("[M]aterials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record."). In other words, once the government relies on a document in a public setting, particularly in litigation, it cannot later invoke confidentiality to shield the entire document from FOIA disclosure.  Thus, even if a privilege or exemption were otherwise available, the public docketing of references to the PSR constitutes a waiver of confidentiality for, at least, portions of the document.

Few courts have addressed the standards that third-party requests must satisfy to warrant disclosure. And those that have done so have generally adopted a threshold comparable to the stringent criteria governing the release of grand jury materials. *See, e.g.*, *Illinois v. Abbott & Assocs.*, 460 U.S. 557, 567 & n.14 (1983); *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218 & n.8 (1979); *United States v. Procter & Gamble Co.*, 356 U.S. 677, 683 (1958). Although courts have historically required a showing of "compelling need" for third-party access to PSRs, *see, e.g.*, *United States v. Charmer Indus., Inc.*, 711 F.2d 1164, 1174–75 (2d Cir. 1983), this Court does not find that a compelling showing that "lifting confidentiality is required to meet ends of justice" is required here. *Hancock Brothers v. Jones*, 293 F. Supp. 1229, 1233 (N.D. Cal. 1968). Here, significant portions of the PSR contain public information, such as the statement of facts and the plea agreement, and the Government itself has already publicly disclosed other segments in its Sentencing Memorandum. *See generally* Sentencing Memorandum. Additionally, the BOP's own guidance explicitly acknowledges that PSRs fall within the scope of FOIA. *See* U.S. Dep't of Just., Federal Bureau of Prisons, Change Notice to Program Statement 1351.05, *Release of Information* (CN-1, Apr. 2, 2015) ("Program Statement") at 4, 16, https://www.bop.gov/policy/progstat/1351_005_CN-1.pdf. As the Program Statement explains, "[e]xamples of documents or information which ordinarily may be withheld from disclosure . . . [though] not intended to represent an all-inclusive list of every situation when FOIA exemptions may apply, . . . [include] Federal Presentence Reports (PSR)[.]" *Id*. This acknowledgment makes clear that PSRs are considered agency records subject to FOIA, albeit with limitations on who may access them and under what circumstances that are not at issue here. *Id*. at 16. In light of this, at least some of the remaining undisclosed portions should be made available, as there is no justification for withholding material that is neither confidential nor exempt under FOIA.

DOJ's argument that the PSR is sealed is legally insufficient without the production of a valid and specific sealing order. The D.C. Circuit in *Morgan* held that an agency may not invoke sealing as a justification for withholding records without providing the relevant order and demonstrating that the sealing was intended to preclude FOIA disclosure. 923 F.2d at 198. No such order has been presented in the current case. Moreover, the BOP's acknowledgment of PSRs' status as FOIA-accessible documents, *see* Program Statement at 4, 16, suggests that even if a general policy of sealing exists within the judiciary, it is not understood by the executive branch to bar all disclosures, particularly not where the document has already been operationalized by the agency. *See, e.g.*, *Berry v. U.S. Dep't of Just.*, 733 F.2d 1343, 1344 (9th Cir. 1984) (holding that PSRs may be subject to FOIA disclosure because court-generated reports are considered agency records).

The PSR at issue is clearly an agency record subject to FOIA. The BOP, as part of DOJ, not only acknowledges receipt and use of PSRs in the ordinary course of its duties, but also recognizes their accessibility pursuant to FOIA. The D.C. Circuit and the Supreme Court have both affirmed the status of PSRs as agency records, and any argument to the contrary, whether based on the origin of the document within the judiciary or its putative confidentiality, fails when the PSR is subsequently obtained, used, and integrated into executive branch processes. Furthermore, the public referencing of the PSR in sentencing filings waives any residual confidentiality claim for the PSR as a whole, and DOJ's failure to produce a valid sealing order defeats its claim of legal prohibition. DOJ's attempt to withhold the PSR in its entirety under FOIA is therefore inconsistent with established precedent, policy, and practice. Accordingly, the Court finds that the PSR constitutes an agency record subject to disclosure under FOIA and, because it was expressly incorporated into sentencing memoranda filed in the public criminal

docket in Mr. Lee's case, withholding of the PSR in its entirety is not warranted. Instead, DOJ must assert specific FOIA exemptions for specific portions of the PSR taking into consideration its responsibilities to disclose reasonably segregable information and assessing which portions have already been made publicly available. Accordingly, the Court concludes that DOJ has failed to meet its burden to withhold the PSR in its entirety, and denies DOJ's motion for summary judgment with respect to WIF Doc 4.

### B. Request to Recommend a Downward Variance (WIF Doc 2)

Having determined that the PSR is not fully exempt from disclosure under FOIA, the Court now considers whether the remaining contested document, the request to recommend a downward variance (WIF Doc 2), is protected under any of the FOIA exemptions asserted by DOJ, all of which AFL disputes. The Court takes the parties' arguments in turn.

#### 1. Exemption 5

AFL initially contests the DOJ's withholding of information under FOIA Exemption 5. FOIA Exemption 5 protects from being disclosed any "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). For a document to be validly withheld under this exemption, it must meet two criteria: it must come from a government agency, and it must fall under a recognized legal privilege that would shield it from disclosure in a court case involving the agency. *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). DOJ relied on Exemption 5 to withhold information under the deliberative process and attorney work-product privileges, both of which are covered by Exemption 5. *See, e.g.*, *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008). The Court will first consider AFL's

objections to the information withheld under the deliberative process privilege before moving on to the attorney work-product privilege.

### a. Deliberative Process Privilege

The deliberative process privilege serves to shield "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Loving*, 550 F.3d at 38 (quoting *Klamath Water*, 532 U.S. at 8). In order to fall under the protection of Exemption 5 via the deliberative process privilege, "an agency's materials must be both 'predecisional' and a part of the 'deliberative process.'" *Nat'l Inst. of Military Just. v. U.S. Dep't of Def.*, 512 F.3d 677, 680 n.4 (D.C. Cir. 2008) (quoting *Formaldehyde Inst. v. Dep't of Health & Human Servs.*, 889 F.2d 1118, 1121 (D.C. Cir. 1989)). The Supreme Court has explained that "[t]he deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news," and the privilege aims to improve "'the quality of agency decisions,' by protecting open and frank discussion among those who make them within the Government." *Klamath Water*, 532 U.S. at 8–9 (citations omitted); *see also Tax Analysts v. I.R.S.*, 117 F.3d 607, 617 (D.C. Cir. 1997) ("[T]he deliberative process privilege . . . reflect[s] the legislative judgment that 'the quality of administrative decision-making would be seriously undermined if agencies were forced to "operate in a fishbowl" because the full and frank exchange of ideas on legal or policy matters would be impossible.'" (quoting *Mead Data*, 566 F.2d at 256)).

The obligation to identify each withheld document with specificity under Exemption 5 is especially important, as "the deliberative process privilege is so dependent upon the individual document and the role it plays in the administrative process." *Animal Legal Def. Fund, Inc. v.*

*Dep't of Air Force*, 44 F. Supp. 2d 295, 299 (D.D.C. 1999) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 867 (D.C. Cir. 1980)).  "The agency must establish 'what deliberative process is involved, and the role played by the documents in issue in the course of that process.'"  *Senate of P.R. v. U.S. Dep't of Just.*, 823 F.2d 574, 585–86 (D.C. Cir. 1987) (quoting *Coastal States*, 617 F.2d at 868).  Further, the agency must not only explain the "function and significance of the document(s) in the agency's decisionmaking process," but also must describe "the nature of the decisionmaking authority vested in the office or person issuing the disputed document(s), and the positions in the chain of command of the parties to the documents."  *Elec. Frontier Found. v. U.S. Dep't of Just.*, 826 F. Supp. 2d 157, 168 (D.D.C. 2011) (quoting *Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 258 (D.C. Cir. 1982)).

DOJ argues that WIF Doc 2 was connected to a decision-making process and was properly withheld under the deliberative process privilege.  *See* Def.'s Reply at 3.  DOJ maintains that the document concerns internal legal strategies and sentencing recommendations, which courts have consistently found to be protected.  *Id*. at 34.  Specifically, DOJ contends that "[h]arm would be caused under deliberative process to AUSAs in carrying out DOJ's mission and government employee[s'] ability to have frank discussion on pre-decisional matters."  *Vaughn* Index at 10.  In response, AFL argues that WIF Doc 2 does not reflect part of a consultative process, but instead reflects the final position of the AUSA advocating for a downward sentencing variance, and thus constitutes final agency action.  Pl.'s Cross-Mot. at 7.  AFL further contends that because this case raises serious concerns of unequal treatment in sentencing based on race and political ideology, the misconduct exception applies and the withheld material must be disclosed.  Pl.'s Reply at 6–7.

The Court concludes that DOJ has the stronger argument. While AFL contends that the deliberative process privilege is inapplicable because WIF Doc 2 allegedly reflects a final agency position, DOJ has sufficiently demonstrated that the document remains both predecisional and deliberative. Courts have consistently held that draft documents and internal memoranda reflecting recommendations or legal strategies prior to a final agency decision fall squarely within the scope of the deliberative process privilege. *See, e.g.*, *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980) (noting that "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency" created as part of internal deliberations are protected under Exemption 5). However, here, WIF Doc 2 is "not signed by an official," is "still pre-decisional," and its release would cause harm because it would reveal "prosecution strategy [that] could encourage circumvention of the law by future defendants." *Vaughn* Index at 2, 11; *see also* Suppl. Hudgins Decl. ¶ 14 ("Plaintiff is seeking records that are core to the deliberative process privilege as they are seeking pre-decisional records that would disclose the thought process and legal impressions of the USAO personnel working on the third-party criminal case."). WIF Doc 2 includes the AUSA's assessment of the seriousness of the charge, Mr. Lee's history, and the potential strength or weakness of sentencing recommendations, and disclosing it would reveal the USAO's internal reasoning behind the sentencing recommendation. *Id.* ¶¶ 11, 14. This satisfies both prongs of the deliberative process privilege: that a document is both predecisional and deliberative. *See Abtew v. U.S. Dep't of Homeland Sec.*, 808 F.3d 895, 898 (D.C. Cir. 2015); *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020).

Further, AFL's argument that the deliberative process privilege should yield to a public interest in exposing government misconduct is unconvincing.  While courts recognize a limited exception to FOIA Exemption 5 in cases of serious misconduct, this exception requires more than speculation.  Rather, the deliberative process privilege may be pierced only upon a showing of *credible* evidence of governmental wrongdoing.  *House v. U.S. Dep't of Just.*, 197 F. Supp. 3d 192, 208–09 (D.D.C. 2016).  Similarly, in *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004), the Supreme Court held that when law enforcement records are sought in which there is a privacy interested protected by FOIA Exemption 7(c) but also an allegation of governmental wrongdoing, "the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred."  Here, AFL relies largely on generalized references in the Sentencing Memorandum regarding Mr. Lee's motivations for participating in protests.  Pl.'s Cross-Mot. at 8–11.  There is no evidence that race or political ideology explicitly or improperly influenced the Government's sentencing recommendation.  Such speculative inference fails to carry AFL's burden.  *Cf. Juarez v. Dep't of Just.*, 518 F.3d 54, 59 (D.C. Cir. 2008) (rejecting attempts to pierce FOIA privileges based on conjecture).

Additionally, AFL's invocation of the Equal Protection Clause and U.S. Sentencing Guidelines Manual § 5H1.10 fails to overcome the deference courts afford to prosecutorial discretion and internal deliberations.  While *Dawson v. Delaware*, 503 U.S. 159, 168 (1992) prohibits reliance on protected First Amendment beliefs in sentencing, it does not support disclosure of deliberative internal documents absent direct evidence of unconstitutional considerations.  Courts are reluctant to allow FOIA to be used as a backdoor for speculative fishing expeditions into prosecutorial motive, and this Court is cautious about the potential of

that reality in this action.  *See Loving*, 550 F.3d at 37 (emphasizing that FOIA exemptions protect against chilling candid deliberations).

AFL's comparison to January 6 prosecutions also lacks probative value.  Sentencing disparities across federal cases arise from individualized assessments involving distinct facts, jurisdictions, and judicial discretion.  *See United States v. Ransom*, 756 F.3d 770, 774 (D.C. Cir. 2014) (holding that a district court's explanation for its above-Guidelines sentence was "both extensive and individualized").  The fact that some January 6 defendants received longer sentences does not support a finding of discriminatory animus in Mr. Lee's case.  Indeed, courts have cautioned against drawing comparisons across different prosecutions without a detailed factual basis.  *See*, *e.g.*, *United States v. Bragg*, 582 F.3d 965, 968 (9th Cir. 2009) (observing that variance in sentences under 18 U.S.C. § 3553(a) can result from individualized, case-specific decision making).  Specifically, numerous judges in this District have concluded that trying to equate the George Floyd protests to the January 6 prosecutions results in a false equivalency.

> Although both Portland and January 6 rioters attacked federal buildings, the Portland defendants primarily attacked at night, meaning that they raged against a largely vacant courthouse.
>
> In contrast, the January 6 rioters attacked the Capitol in broad daylight.  And many entered it.  Thousands of congressional staffers walked the Capitol's corridors that day.  So did hundreds of legislators and the Vice President, all of whom appeared for a constitutionally mandated proceeding.
>
> . . . . Members of Congress cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters.
>
> The action in Portland, though destructive and ominous, caused no similar threat to civilians.

*See, e.g.*, *United States v. Judd*, 579 F. Supp. 3d 1, 7–8 (D.D.C. 2021) (internal citations omitted); *see United States v. Padilla*, No. 21-cr-214, 2023 WL 1964214, at *5 (D.D.C. Feb. 13, 2023) (similar); *United States v. Brock*, 628 F. Supp. 3d 85, 102–03 (D.D.C. 2022) (similar).

The record shows that Mr. Lee pled guilty, accepted responsibility, and was recommended for a downward variance within the permissible discretion of the prosecutor and sentencing judge. AFL's claims, rooted in speculation and policy disagreement, do not meet the threshold to compel disclosure of WIF Doc 2.  The balance of FOIA, judicial precedent, and the evidentiary record thus supports the withholding in this case.  *See Abtew*, 808 F.3d at 898–99; *Machado Amadis*, 971 F.3d at 370.

### b.  Attorney Work-Product Privilege

DOJ also relies on the attorney work-product privilege as a basis for withholding WIF Doc 2 under Exemption 5.  *See Judicial Watch, Inc. v. U.S. Dep't of Just.*, 432 F.3d 366, 369 (D.C. Cir. 2005) ("FOIA Exemption 5 incorporates the work-product doctrine and protects against the disclosure of attorney work product.").  As explained by the court, "[t]he work-product doctrine shields materials 'prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).'"  *Id.* (quoting Fed. R. Civ. P. 26(b)(3)).  In assessing an agency's application of the work-product doctrine to withhold information, the central "'testing question' . . . is 'whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'"  *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998) (quoting *Senate of P.R.*, 823 F.2d at 586 n.42).  To satisfy this standard, "the lawyer must have at least had a subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable."  *Id.*  Therefore, for an agency to properly assert the attorney work-product doctrine under FOIA, it must at a minimum: (1) "provide a description of the nature and contents of the withheld document," (2) "identify the document's author or origin (by job title or

otherwise)," (3) "describe the factual circumstances that surround the document's creation," and (4) "provide some indication of the type of litigation for which the document's use is at least foreseeable." *Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 950 F. Supp. 2d 221, 241–42 (D.D.C. 2013).

As an initial matter, AFL argues that the contested documents should be produced because, in its initial motion, DOJ inadvertently invoked the attorney-client privilege instead of the attorney work-product privilege. Pl.'s Cross-Mot. at 11–13. AFL argues that this misstatement constitutes a waiver or forfeiture of the work-product privilege because DOJ did not explicitly identify that privilege in its opening brief. *Id.* However, DOJ clearly asserted the work-product privilege in the Hudgins declaration, which accompanied the motion and clearly set forth the agency's positions providing the evidentiary basis for withholding. *See* Hudgins Decl. ¶ 13. Courts in this Circuit have made clear that such human errors do not amount to waiver where the correct privilege is otherwise asserted in the record. *See August v. FBI*, 328 F.3d 697, 701–02 (D.C. Cir. 2003) (holding that an agency defendant does not forfeit any exemptions due to the failure to assert them as a result of "human error"). Additionally, AFL addressed the work-product privilege in its own briefing, negating any claim of prejudice and reinforcing that the issue was fully joined. *See* Pl.'s Cross-Mot. at 11–13. As such, the Court will not deem the work-product privilege forfeited and will consider DOJ's invocation of the privilege in evaluating the propriety of the withholdings.

DOJ argues that WIF Doc 2 is protected by FOIA Exemption 5 because the redactions relate directly to ongoing litigation involving Mr. Lee and thus qualify for protection. Def.'s Reply at 6–7. DOJ also maintains that disclosure would undermine the legal interests safeguarded by the work-product doctrine. *Id.* The Court finds that DOJ properly invoked the

work-product privilege under FOIA Exemption 5. DOJ has demonstrated that WIF Doc 2 was prepared by line prosecutors in the course of a pending criminal prosecution and thus falls squarely within the work-product doctrine. *See* Hudgins Decl. ¶¶ 13–17 ("The disclosure of this information would reveal the government attorneys' legal strategies, research, opinion and legal impression of the strength or weakness of the potential sentencing recommendations that would ultimately be the basis for [the Sentencing Memorandum]."); *see also* Suppl. Hudgins Decl. ¶¶ 7–8. Notably, WIF Doc 2 reflects discretionary assessments and legal reasoning about sentencing strategy, a quintessential example of attorney opinion work product. *See Tax Analysts*, 117 F.3d at 620.

The context of WIF Doc 2 also supports DOJ's position: it was created during Mr. Lee's active criminal proceeding. *See* Suppl. Hudgins Decl. ¶ 8 ("The document being withheld from disclosure pursuant to the attorney work-product privilege includes the request to recommend a variance or departure from the advisory sentencing guidelines drafted by the AUSAs who were handling the third-party criminal case."). Courts have consistently recognized that where materials are generated as part of an ongoing investigation or case, particularly by prosecutors, they are presumed to be prepared in anticipation of litigation. *See, e.g.*, *Nat'l Ass'n of Criminal Def. Laws. v. U.S. Dep't of Just., Exec. Office for U.S. Att'ys*, 844 F.3d 246, 253 (D.C. Cir. 2016) ("Exemption 5 extends to documents prepared in anticipation of foreseeable litigation, . . . even if no specific claim is contemplated."). Specifically, courts have held that "evidence obtained in the course of the inquiry, evaluation of the case, and reasons to decline prosecution" "reflect such matters as trial preparation, trial strategy, interpretations, and personal evaluations and opinions pertinent to the investigation by the USAO," and thus fall "within the boundary of the work product privilege and, therefore, Exemption 5 of the FOIA." *Jackson v. U.S. Att'ys Off.*,

*Dist. of N.J.*, 293 F. Supp. 2d 34, 40 (D.D.C. 2003) (internal citations omitted).  The D.C. Circuit has held that this presumption applies even where litigation is merely foreseeable, so long as the agency had an objectively reasonable belief that litigation was a real possibility.  *See SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1203 (D.C. Cir. 1991) ("[W]here an attorney prepares a document in the course of an active investigation focusing upon specific events and a specific possible violation by a specific party, it has litigation sufficiently 'in mind' for that document to qualify as attorney work product."); *see also In re Sealed Case*, 146 F.3d at 884.

DOJ's Hudgins declarations explain that the redacted content includes internal prosecutorial recommendations and case-specific legal theories, the disclosure of which would undermine the Government's ability to litigate criminal matters effectively.  Hudgins Decl. ¶¶ 15–18; Suppl. Hudgins Decl. ¶¶ 7–8; *see also Vaughn* Index at 10.  Importantly, DOJ satisfied the evidentiary requirements for withholding materials under Exemption 5 by providing the necessary context for each redaction.  An agency asserting the work-product privilege must identify the author or source, describe the document's contents, explain the surrounding facts, and establish a litigation nexus.  *Am. Immigr. Council*, 950 F. Supp. 2d at 241–42.  DOJ has done so here.  Accordingly, the Court concludes that DOJ's redactions under Exemption 5 are legally justified.  WIF Doc 2 was prepared in anticipation of and during active litigation, reflects protected legal analysis, and was properly withheld under the work-product doctrine.  *See Tax Analysts*, 117 F.3d at 620 (describing Exemption 5 as encompassing both factual and opinion work product).

### 2.  Exemptions 6 and 7(C)

As an additional basis for withholding WIF Doc 2, DOJ asserts that it properly withheld information on the document under FOIA Exemptions 6 and 7(C) because it is a law

enforcement document containing confidential, non-public details about the prosecution of a third-party criminal defendant. Def.'s Mot. at 7–8; *see also* Hudgins Decl. ¶ 23. Releasing the redacted information, it argues, would constitute an unwarranted invasion of personal privacy, potentially leading to harassment, stigma, or harm to the individual. *Id.* In response, AFL argues that the public interest in disclosing WIF Doc 2 outweighs any privacy concerns, as the record may expose government misconduct, specifically racial favoritism in sentencing. Pl.'s Cross-Mot. at 13–15. The Sentencing Memorandum itself, AFL contends, demonstrates improper government actions, and disclosure would further public understanding of these actions, particularly whether the sentencing decision was based on improper or discriminatory factors. *Id.* AFL further asserts that DOJ's failure to justify the privacy concerns reinforces its position that transparency is essential to remedying government misconduct. *Id.* Applying the FOIA Exemption 7(C) analysis, the Court finds that DOJ has the better argument.

FOIA Exemptions 6 and 7(C) concern personal privacy interests, and they are often cited together as justification for withholding the same records. Exemption 6 shields "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) protects "records or information compiled for law enforcement purposes . . . to the extent that the production of such . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Both exemptions are aimed at safeguarding privacy interests, particularly in situations where disclosure could result in harm, harassment, or unwarranted stigma. However, "privacy interests are particularly difficult to overcome when law enforcement information regarding third parties is implicated." *Blackwell v. FBI*, 646 F.3d 37, 41 (D.C. Cir. 2011) (quoting *Martin v. Dep't of Just.*, 488 F.3d 446, 457 (D.C. Cir. 2007)). This principle

underscores the appropriateness of withholding personal, confidential information regarding individuals, including Mr. Lee, involved in a criminal prosecution, as releasing such a record could subject them to harm.

Exemption 7(C) has a lower threshold for harm compared to the "clearly unwarranted" standard required under Exemption 6.  Because WIF Doc 2 was "created for the purpose of handling a criminal prosecution," *see* Hudgins Suppl. Decl. ¶ 32, the Court will limit its analysis to Exemption 7(C).  *See U.S. Dep't of Just. v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 755–56 (1989) (distinguishing between Exemption 7(C) and Exemption 6); *Roth v. U.S. Dep't of Just.*, 642 F.3d 1161, 1173 (D.C. Cir. 2011) (stating there is "no need to consider Exemption 6 separately [where] all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)"); *Judicial Watch, Inc. v. Dep't of Just.*, 365 F.3d 1108, 1125 (D.C. Cir. 2004) (noting that "the privacy inquiry of Exemptions 6 and 7(C) [is] essentially the same").  The D.C. Circuit has explained that

> [a]s a result of [e]xemption 7(C), FOIA ordinarily does not require disclosure of law enforcement documents (or portions thereof) that contain private information . . . [because] privacy interests are particularly difficult to overcome when law enforcement information regarding third parties is implicated . . . . Moreover, the Supreme Court has made clear that requests for such third party information are strongly disfavored.  That is particularly true when the requester asserts a public interest—however it might be styled—in obtaining information that relates to a criminal prosecution.

*Blackwell*, 646 F.3d at 41(citation modified).

### a.  Privacy Interests

The initial step in evaluating Exemption 7(C) is to determine whether WIF Doc 2 implicates a privacy interest.  *See ACLU v. U.S. Dep't of Just.*, 655 F.3d 1, 6 (D.C. Cir. 2011).  When the record pertains to criminal law enforcement investigations, Exemption 7(C) recognizes the "strong interest" that all individuals—including suspects, witnesses, and investigators—have

"in not being associated unwarrantedly with alleged criminal activity." *Dunkelberger v. U.S. Dep't of Just.*, 906 F.2d 779, 781 (D.C. Cir. 1990) (quoting *Stern v. FBI*, 737 F.2d 84, 91–92 (D.C. Cir. 1984)); *see also Nation Mag., Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 894 (D.C. Cir. 1995) (noting that Exemption 7(C)'s privacy protections extend to third parties named in investigatory files). Consequently, courts have invoked Exemption 7(C) to justify withholding the identities of third parties, including investigators, named in law enforcement records. *See Blackwell*, 646 F.3d at 41 (stating that "privacy interests are particularly difficult to overcome when law enforcement information regarding third parties is implicated" (quoting *Martin*, 488 F.3d at 457)); *see also Schrecker v. U.S. Dep't of Just.*, 349 F.3d 657, 661 (D.C. Cir. 2003) (noting that "our decisions consistently supported nondisclosure of names or other information identifying individuals appearing in law enforcement records"); *see also Dorsett v. U.S. Dep't of Treasury*, 307 F. Supp. 2d 28, 38–39 (D.D.C. 2004) (describing names of individuals the defendant sought to withhold, including FBI agents and local law enforcement personnel, as the "type of information . . . routinely considered protected by Exemption 7(C)"). Here, WIF Doc 2 includes DOJ's internal reasoning for its sentencing recommendation beyond what was disclosed in the Government's Sentencing Memorandum, *see generally* Sentencing Memorandum, and attorney work product containing intimate information and draft materials. *See* Hudgins Decl. ¶¶ 20, 24–25. The release of such data could result in harassment or harm to Mr. Lee and subject him to unwarranted public stigma because it constitutes "an unwarranted invasion of [his] personal privacy." *Id*. WIF Doc 2 contains "more intimate details" about Mr. Lee, and "[t]here is no additional information to be revealed to the public that would assist in understanding the workings of the federal government by releasing" the redactions made to this document. *Id*. at 25.

*b. Public Interests*

Once it is established that a privacy interested is implicated, a FOIA requester must

demonstrate that the public interest sought is significant and specific, and that the disclosure of

the information would likely advance that interest. *Boyd v. Crim. Div. of Dep't of Just.*, 475 F.3d

381, 387 (D.D.C. 2015). AFL argues that the public interest outweighs any privacy interest that

DOJ identified. Pl.'s Cross-Mot. at 13–15. AFL also contends that disclosure of WIF Doc 2 is

warranted because AFL contends that DOJ's Sentencing Memorandum suggests that it

improperly considered race and political motivations in recommending a lighter sentence for Mr.

Lee, raising serious concerns of misconduct. *Id*. AFL asserts that exposing such potential

"racial favoritism" and selective use of evidence serves a compelling public interest, and any

claimed privacy concerns are minimal and unsupported. *Id*. The key question, then, is whether

AFL has demonstrated government misconduct significant enough to outweigh the privacy

interests protected by Exemption 7(C).

The Supreme Court has established a framework for weighing a privacy interest under

Exemption 7(C) against a claimed public interest in the release of information purported to

demonstrate that "responsible officials acted negligently or otherwise improperly in performing

their duties." *Favish*, 541 U.S. at 159. Under the *Favish* standard, in order to access private

information, a requester must, at a minimum, "produce evidence that would warrant a belief by a

reasonable person that the alleged Government impropriety might have occurred." *Blackwell*,

646 F.3d at 41 (citing to *Favish*, 541 U.S. at 174). As a result, courts consistently require a

substantial evidentiary foundation when a FOIA requester claims a public interest based on

alleged governmental misconduct. *See Favish*, 541 U.S. at 174 (noting that "[a]llegations of

24

government misconduct are 'easy to allege and hard to disprove'"). This Court finds that AFL has not satisfied the rigorous evidentiary threshold set forth in *Favish*.

AFL provides no evidence of the claimed government misconduct, other than stating that "the requested record[] would significantly further the public's understanding of government operations," "there is a significant public interest in disclosing whether the withheld request to recommend that variance (WIF Doc 2) was grounded in additional impropriety and whether the Sentencing Memorandum merely cherry-picked mitigating portions of the Presentence Investigation Report rather than the aggravating ones, to support a predetermined outcome motivated by improper considerations," and "[t]he requested record[] may also reveal why one political motivation deserved a downward variance, while another deserved an upward variance." Pl.'s Cross-Mot. at 15. However, AFL's claims are conclusory and are unsupported by the record. AFL offers no concrete facts or independent corroboration to substantiate its assertions of bias or misconduct within DOJ's sentencing recommendations. The mere possibility that the records *might* reveal some form of impropriety does not meet the burden established by *Favish*.

### c. Balancing the Privacy and Public Interests

The balancing of public and private interests is central to the Exemption 7(C) analysis. *See Taylor v. Exec. Off. for U.S. Att'ys*, No. 18-2513, 2024 WL 4253160, at *4 (D.D.C. Sept. 20, 2024) ("In determining whether Exemption 7(C) applies to particular information, the Court must balance an individual's interest in privacy against the public interest in disclosure. . . . It is a FOIA requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant." (internal citations omitted)). Both parties agree that "the Court must balance the asserted privacy interest against the public interest

in disclosure." Pl.'s Reply at 10–11. Here, the individual privacy interest at stake belongs to Mr. Lee, whose personal information appears in the record at issue. Courts have consistently held that third-party privacy interests are entitled to substantial protection under Exemption 7(C), and that protection is heightened in the context of law enforcement files. *Blackwell*, 646 F.3d at 41; *see also Roth*, 642 F.3d at 1174 (quoting *Schrecker*, 349 F.3d at 666). The asserted public interest, advanced by AFL, is grounded in concerns about political bias in DOJ prosecutorial decisions. However, Exemption 7(C) requires more than speculation or generalized claims to tip the balance in favor of disclosure. *Favish*, 541 U.S. at 174 (emphasizing that where a FOIA requester alleges government misconduct, the claim must be supported by "evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred"). As such, a "bare suspicion" is insufficient. *Id.* AFL offers no persuasive evidence of governmental wrongdoing or impropriety in Mr. Lee's case. Its assertions of political bias are generalized and unsupported by any concrete showing that disclosure of WIF Doc 2 would shed light on DOJ operations or prosecutorial decision-making that would outweigh Mr. Lee's privacy interests. Courts have made clear that the only public interest cognizable under Exemption 7(C) is one that focuses on "the citizens' right to be informed about 'what their government is up to.'" *Davis v. U.S. Dep't of Just.*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *Reps. Comm.*, 489 U.S. at 773). AFL's submission fails to establish how the requested records would meaningfully advance that interest. Given the absence of evidence indicating misconduct and the substantial privacy interests at stake, the balance weighs decisively against disclosure. Mr. Lee retains a strong interest in avoiding unwarranted public exposure, and the speculative public interest cited by AFL does not meet the high bar necessary to override that interest. Accordingly, Exemption 7(C) applies, and WIF Doc 2 may lawfully be withheld.

In sum, DOJ's invocation of Exemption 7(C) to withhold personal, confidential information in these documents is justified.  Absent an identifiable public interest, "the privacy interest . . . prevails because 'something, even a modest privacy interest, outweighs nothing every time.'"  *Kowal v. U.S. Dep't of Just.*, 107 F.4th 1018, 1031 (D.C. Cir. 2024) (quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989)).  DOJ's decision to withhold this information, considering both the nature of the law enforcement context and the personal privacy interests at stake, aligns with established case law that favors protecting third-party privacy in criminal matters.  Courts have consistently upheld the withholding of these types of records under FOIA, and the circumstances here clearly justify the application of Exemption 7(C) to prevent the disclosure.  Accordingly, the Court finds that DOJ's withholdings pursuant to FOIA Exemption 7(C) are justified.

### 3.  Foreseeable Harm Standard

Separate from the challenges to DOJ's use of FOIA exemptions to support their lack of disclosure, AFL next argues that DOJ does not satisfy the foreseeable harm standard when invoking the deliberative process privilege and the attorney work-product privilege under FOIA Exemption 5.  The FOIA Improvement Act stipulates that "[a]n agency shall withhold information . . . only if the agency reasonably foresees that disclosure would harm an interest protected by" one of FOIA's nine exemptions.  5 U.S.C. § 552(a)(8)(A).  Under this provision, agencies must demonstrate not only that a withheld record "falls within a FOIA exemption," but also "that the agency 'reasonably foresees that disclosure would harm an interest protected by [the] exemption'" asserted.  *Machado Amadis*, 971 F.3d at 370 (quoting 5 U.S.C. § 552(a)(8)(A)(i)(I)).

To meet this additional, "heightened" requirement, *Jud. Watch, Inc. v. U.S. Dep't of Com.*, 375 F. Supp. 3d 93, 100 (D.D.C. 2019), an agency must "'identify specific harms to the relevant protected interests that it can reasonably foresee would actually ensue from disclosure of the withheld materials' and 'connect[ ] the harms in [a] meaningful way to the information withheld,'" *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 106 (alterations in original) (quoting *Judicial Watch, Inc. v. U.S. Dep't of Just.*, No. 17-0832, 2019 WL 4644029, at *5 (D.D.C. Sept. 24, 2019)); *see also* H.R. Rep. No. 114-391, at 9 (2016) ("An inquiry into whether an agency has reasonably foreseen a specific, identifiable harm that would be caused by a disclosure would require the ability to articulate both the nature of the harm and the link between the specified harm and specific information contained in the material withheld.").  Accordingly, agencies "must provide more than 'nearly identical boilerplate statements' and 'generic and nebulous articulations of harm.'"  *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 106 (quoting *Judicial Watch II*, 2019 WL 4644029, at *4–5).

### a.  Deliberative Process Privilege

The "agency's burden to demonstrate that harm would result from disclosure may shift depending on the nature of the interests protected by the specific exemption with respect to which a claim of foreseeable harm is made." *Ecological Rts. Found. v. EPA*, No. 19-980, 2021 WL 535725, at *32 (D.D.C. Feb. 13, 2021) (citing *Rosenberg v. Dep't of Def.*, 442 F. Supp. 3d 240, 259 (D.D.C. 2020); S. Rep. No. 114-4, at 8 (2015)).  To establish foreseeable harm in cases involving the deliberative process privilege, "[t]he agency 'cannot simply rely on generalized assertions that disclosure could chill deliberations,'" but rather "must 'provide context or insight into the specific decision-making processes or deliberations at issue, and how they in particular would be harmed by disclosure.'"  *Id.* (first quoting *Machado Amadis*, 971 F.3d at 371; and then

quoting *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 107). Although agencies "must provide more than nearly identical boilerplate statements and generic and nebulous articulations of harm," *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 106 (citation modified), they are not required to offer factual support for the supposed harm, *see Machado Amadis*, 971 F.3d at 371.

AFL argues that DOJ has failed to meet the foreseeable harm standard required under FOIA by offering only vague, boilerplate justifications for withholding records under the deliberative process privilege. Pl.'s Cross-Mot. at 15–16. Instead of articulating concrete harms tied to the specific exemptions, AFL contends that DOJ relies on generalized assertions (such as fear of public misinterpretation or embarrassment) and references harms related to exemptions it did not invoke, undermining the credibility and sufficiency of its claims. *Id.*; Pl.'s Reply at 9–10. DOJ asserts that releasing internal, non-public records related to a third-party defendant and victims would foreseeably cause substantial invasions of privacy and expose those individuals to public scrutiny and harassment, particularly because at the time of this motion, the appeal of Mr. Lee's sentence was pending. Hudgins Decl. ¶ 37; *see also* Appellant's Opening Brief, *Lee v. United States*, No. 24-2017 (8th Cir. Nov. 21, 2024). Because AFL is a widely visible media organization, DOJ argues that disclosure would amplify this harm. *Id.*

First, the Court finds that any asserted foreseeable harm must relate directly to the interest protected by the claimed exemption. *See Ecological Rts. Found. v. EPA*, 541 F. Supp. 3d 34, 64 (D.D.C. 2021) ("An agency successfully makes this second, 'heightened' showing . . . by identify[ing] specific harms to the relevant protected interests that it can reasonably foresee would actually ensue from disclosure of the withheld materials and connect[ing] the harms in [a] meaningful way to the information withheld.") (citation modified). Here, AFL contends that

DOJ has failed to satisfy the foreseeable harm standard required under both the deliberative

process privilege and the attorney work-product privilege, as invoked pursuant to Exemption 5.

*See* Pl.'s Cross-Mot. at 15–18.  Accordingly, DOJ cannot rely on foreseeable harm to personal

privacy interests, protected under Exemptions 6 and 7(C), to justify withholding, as the

foreseeable harm under those exemptions is not challenged here.  Moreover, under FOIA, the

identity of the requester is irrelevant; disclosure to one requester is effectively disclosure to the

public at large.  *See North v. Walsh*, 881 F.2d 1088, 1097 (D.C. Cir. 1989) ("[Plaintiff]'s need or

intended use for the documents is irrelevant to his FOIA action; his identity as the requesting

party 'has no bearing on the merits of his . . . FOIA request.'" (quoting *Reporters Comm. for

Freedom of the Press*, 489 U.S. at 771).  Therefore, DOJ cannot argue that it would release the

information to a different requester, but not to AFL, simply because AFL is "a public education

and news media organization that has a far reach."  *See* Hudgins Decl. ¶ 37.  Finally, as of

August 8, 2025, the 8th Circuit reversed the district court's earlier ruling and remanded the case

for further proceedings.  *See generally Lee v. United States*, No. 24-cv-2017, 2025 WL 2265724

(8th Cir. Aug. 8, 2025).  Taking these facts together, the Court nevertheless finds that DOJ's

foreseeable harm analysis is sufficient.

DOJ has done more than invoke generic concerns or offer conclusory statements.  First, it

has provided a detailed and context-specific showing of how the disclosure of the withheld

materials, namely draft sentencing recommendations and internal communications, would chill

future deliberations and inhibit candor among prosecutors.  *See Reps. Comm. for Freedom of the

Press v. FBI*, 3 F.4th 350, 370 (D.C. Cir. 2021) (noting that "a focused and concrete

demonstration of why disclosure . . . will, in the specific context of the agency action at issue,

actually impede those same agency deliberations going forward" satisfies the foreseeable harm

standard); *see also* Suppl. Hudgins Decl. ¶¶ 55–58.  DOJ's declarations also identify the deliberative character of the redacted materials, which include predecisional legal impressions by an AUSA regarding sentencing, and explain how disclosure would deter similar forthright deliberations in future cases.  *See Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 107 (noting that an agency must "provide context or insight into the specific decision-making processes or deliberations at issue, and how they in particular would be harmed by disclosure"); *see also* Suppl. Hudgins Decl. ¶¶ 9–14.  DOJ expressly details the impact of releasing non-final internal legal recommendations, including the chilling effect on honest communication and concern over misinterpretation by the public.  *See* Suppl. Hudgins Decl. ¶¶ 14, 49–52; *see also Machado Amadis*, 971 F.3d at 370–71 (recognizing the chilling effect of disclosure of predecisional materials as foreseeable harm when supported by specific declarations).

Moreover, the specificity of DOJ's harms analysis distinguishes this action from those where courts rejected exemption claims based on vague or formulaic statements.  In *Center for Investigative Reporting v. U.S. Customs & Border Protection*, the court found agency justifications inadequate where they failed to link the withheld material to a particular harm.  436 F. Supp. 3d at 106 ("Here, the defendants' claims of foreseeable harm consist of 'general explanations' and 'boiler plate language' . . . that do not satisfy the foreseeable-harm requirement." (citation modified)).  By contrast, here, DOJ explicitly ties the content of WIF Doc 2 to harms such as disruption of internal deliberative processes.  *See Rosenberg*, 442 F. Supp. 3d at 260–61 (recognizing foreseeable harm where disclosure would result in loss of frank discussion and misinterpretation of preliminary recommendations).  Accordingly, the Court finds that DOJ has sufficiently demonstrated the foreseeable harm necessary to justify withholding WIF Doc 2 under the deliberative process privilege.

*b. Attorney Work-Product Privilege*

This Circuit lacks precedent in applying the foreseeable harm requirement to attorney-client withholdings. *See Wilderness Workshop v. U.S. Dep't of Agric.*, No. 21-cv-2108, 2023 WL 5672578, at *9 (D.D.C. Sept. 1, 2023) ("Although the D.C. Circuit has expounded upon the relationship between the foreseeable harm requirement and the deliberative process privilege, the relationship between foreseeable harm and the attorney-client and work-product privileges remains largely undefined."). To be clear, the statute unmistakably mandates that the foreseeable harm requirement extends to all privileges under FOIA Exemption 5. *See Reps. Comm. for Freedom of the Press v. U.S. Customs & Border Prot.*, 567 F. Supp. 3d 97, 120 (D.D.C. 2021). Nonetheless, another court in this District has indicated—emphasizing the "prominent and sacrosanct" character of the attorney-client relationship—that in the context of attorney-client and work-product privileges, "for which the risk of harm through disclosure is more self-evident and the potential for agency overuse is attenuated," an agency may not be required to submit as detailed a showing to meet the foreseeable harm standard. *Id.* This Court agrees. While FOIA requires agencies to articulate a "non-generalized explanation of the foreseeable harm that would result from disclosure" of privileged material, demonstrating that the attorney-client privilege applies "will go a long way" toward fulfilling that requirement. *Id.* at 124. Moreover, similar to the deliberative process privilege, the Court holds that the foreseeable harm criterion may be deemed satisfied, even without a detailed agency justification, if the "context and purpose" of the withheld information support such a conclusion. *Reps. Comm. for Freedom of the Press*, 3 F.4th at 372; *see also Reps. Comm. for Freedom of the Press*, 567 F. Supp. 3d at 110.

Here, the Court finds that DOJ satisfies the foreseeable harm requirement with respect to the attorney work-product privilege. Courts have routinely recognized that disclosing documents

prepared in anticipation of litigation, especially those reflecting legal theories, strategies, or mental impressions of attorneys, could compromise future prosecutorial effectiveness and legal positions. *See Judicial Watch, Inc.*, 432 F.3d at 369–70. Although the 8th Circuit issued a decision on Mr. Lee's appeal, it remains active because it was remanded to the district court for further proceedings. *See generally Lee*, 2025 WL 2265724. As such, releasing WIF Doc 2 could still jeopardize the integrity of future litigation by potentially revealing sensitive legal strategies. The attorney work-product privilege "shields materials prepared in anticipation of litigation," *McKinley v. Bd. of Governors of the Fed. Rsrv. Sys.*, 647 F.3d 331, 341 (D.C. Cir. 2011) (citation modified), to protect from disclosure the "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning litigation." *Heggestad v. U.S. Dep't of Just.*, 182 F. Supp. 2d 1, 7 (D.D.C. 2000). This privilege exists to ensure fairness in the adversarial process and to prevent one party from gaining an undue advantage by accessing the other side's confidential legal analysis. Furthermore, because disclosure to one requester constitutes disclosure to the public at large, releasing WIF Doc 2 to AFL would effectively make it available to Mr. Lee's attorneys and any other interested party. This broad public release could undermine the protections afforded by the attorney work-product doctrine and disrupt the ongoing judicial process.

DOJ asserts that the release of the withheld information would undermine its personnel's ability to "effectively and honestly communicat[e] their perspective on potential agency decision due to fear of public consumption and interpretation." Suppl. Hudgins Decl. ¶ 14. "As for foreseeable harm, the Court is permitted to consider context, even in the absence of a specific agency explanation." *See Wilderness Workshop*, 2023 WL 5672578, at *10. DOJ's assertion in its declarations, along with the fact that the case is still active after it was remanded to the district

court for further proceedings, supports the finding that "the disclosure of the agenc[y]'s . . . work-product withholdings would harm the interests th[at] privilege[] w[as] intended to protect." *Id*. Therefore, DOJ's explanation that WIF Doc 2 reflects protected attorney thought processes and strategic judgment specific to Mr. Lee's prosecution is well supported. *See Tax Analysts*, 117 F.3d at 620 (noting that work product doctrine applies to documents prepared in anticipation of litigation that reflect legal theories and opinions of counsel).

In sum, DOJ has persuasively articulated why the release of WIF Doc 2 would cause concrete and foreseeable harms to the agency's deliberative functions and attorney work-product protections. Accordingly, DOJ's detailed declarations and the nature of the redacted record pursuant to Exemption 5 are sufficient to justify summary judgment in its favor. *See generally Vaughn* Index; *see also Ecological Rts. Found*, 2021 WL 535725, at *32 (upholding summary judgment where agency tied withheld content to specific harm in context of deliberative decision-making).

## C.  Segregability

The Court now turns to the issue of whether the DOJ has fulfilled its obligation to demonstrate that "[a]ny reasonably segregable portion of a record [was] provided to [the plaintiff] after deletion of the portions which are exempt under [the FOIA]." 5 U.S.C. § 552(b). The D.C. Circuit has acknowledged that segregability depends on a document's content and presentation, making the agency's burden challenging, as agencies "should not be forced to provide such a detailed justification that would itself compromise the secret nature of potentially exempt information," but must still explain their conclusions to allow judicial review and plaintiff challenge. *Mead Data*, 566 F.2d at 261. The Circuit requires agencies to state their reasons and describe "what proportion of the information in a document is non-exempt and how

that material is dispersed," imposing a lighter burden when only a small part is non-exempt but a

"high standard of proof" when more is non-exempt. *Id*. Nonetheless, agencies benefit from a

presumption of compliance with segregability obligations, which a requester must rebut with

some "quantum of evidence." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir.

2007). Later decisions have softened *Mead Data*'s standard, holding that segregability can be

satisfied by (1) a *Vaughn* index detailing withheld documents and exemptions, and (2) a

declaration affirming release of all reasonably segregable material. *See, e.g.*, *Loving*, 550 F.3d at

41; *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002).

### 1. Presentence Investigation Report (WIF Doc 4)

Regarding the PSR, which was withheld in full under FOIA Exemptions 6 and 7(C) and

purportedly sealed by the Minnesota district court, the Court finds that DOJ has not met its

segregability burden. "[T]he mere existence of a sealing order does not necessarily mean that an

agency record is exempt under FOIA." *See Woodward v. U.S. Marshals Serv.*, No. 18-cv-1249,

2022 WL 296171, at *11 (D.D.C. Feb. 1, 2022). Furthermore, it is "[DOJ]'s burden to show that

the court's sealing order in fact functions as a ban on the voluntary release of these materials."

*Id*. To prove that a sealing order was also intended to prohibit future disclosure pursuant to

FOIA, an agency must assert evidence from "(1) [the] sealing order from the court . . .;

(2) extrinsic evidence about the intended scope of a purported sealing order; (3) orders of the

same court in similar circumstances; and (4) the issuing court's general rules or procedures."

*Judicial Watch, Inc. v. U.S. Dep't of Just.*, 813 F.3d 380, 383 (D.C. Cir. 2016). Here, DOJ does

not provide such evidence to support a finding that the PSR must be withheld in its entirety. "If

the seal was designed only to prohibit [plaintiff] from obtaining the [records] from the court

record of his criminal trial, [plaintiff's] FOIA complaint is a valid attempt to obtain those notes

under the FOIA, not a collateral attack on the sealing order." *Morgan*, 923 F.2d at 198. Therefore, DOJ has not met its segregability burden of demonstrating that any reasonably segregable, non-exempt portions of the PSR have been released. Without sufficient evidence to justify full withholding, DOJ must conduct a proper segregability analysis and release all non-exempt information, which is consistent with the Court's finding in Section IV(A). And as set forth above, *supra* pp. 6–11, because a significant portion of the PSR is already public, DOJ must also assess which portions of the PSR cannot be withheld due to public availability.

2. Request to Recommend a Downward Variance (WIF Doc 2)

Applying the segregability framework articulated in *Loving* and *Johnson* to the withheld request to recommend a downward variance (WIF Doc 2), the Court finds that DOJ has met its burden with respect to segregability. In *Loving*, the D.C. Circuit held that a declaration affirming that all reasonably segregable material has been released, when paired with a sufficiently detailed *Vaughn* index, is adequate for purposes of judicial review. 550 F.3d at 41. Similarly, in *Johnson v. Executive Office for U.S. Attorneys*, the court affirmed that the agency satisfied its segregability burden by providing a "comprehensive *Vaughn* index" and submitting affidavits declaring that "no additional segregable information could be disclosed." 310 F.3d at 776. The D.C. Circuit's approach to segregability allows DOJ to satisfy its burden with respect to WIF Doc 2.

Here, DOJ submitted detailed declarations by FOIA officer Natasha Hudgins, stating under oath that "each page was individually examined line-by-line" to identify reasonably segregable non-exempt information. Hudgins Decl. ¶ 39; *see also* Suppl. Hudgins Decl. ¶ 57. As such, this level of document-specific attention exceeds the minimum required under *Loving* and *Johnson*, which accepts high-level, but credible, assertions of compliance. Moreover, FOIA

case law does not require the government to mechanically segment each page when doing so would effectively disclose the very exempt information the agency is authorized to withhold. Here, AFL offers no factual basis to overcome the presumption that DOJ "complied with the obligation to disclose reasonably segregable material." *Sussman*, 494 F.3d at 1117. AFL's only challenge, that the DOJ's declarations lack credibility due to post-complaint refinement of withholdings, does not rise to the level of affirmative evidence of bad faith, particularly when such reevaluations are encouraged under FOIA. Courts in this Circuit "decline[ ] to find subsequent disclosure as evidence of bad faith, reasoning that 'to effectively penalize an agency for voluntarily declassifying documents would work mischief by creating an incentive against disclosure.'" *Pub. Citizen v. Dep't of State*, 276 F.3d 634, 645 (D.C. Cir. 2002) (quoting *Pub. Citizen v. Dep't of State*, 11 F.3d 198, 203 (D.C. Cir. 1993)).

Indeed, the D.C. Circuit has emphasized that courts must not impose disclosure obligations that undermine the very exemptions FOIA creates. In *Food Marketing Institute v. Argus Leader Media*, the Supreme Court explained that FOIA's exemptions are not secondary to its disclosure mandates, but coequal: "[T]hose exemptions are as much a part of FOIA's purposes and policies as the statute's disclosure requirement." 588 U.S. 427, 439 (2019) (citation modified). Thus, DOJ's careful effort to reevaluate prior redactions and refine its disclosures is not only permissible but fully consistent with FOIA's dual objectives of transparency and confidentiality. Taken together, DOJ's sworn declarations, its individualized document review, and its supplemental disclosures provide more than a sufficient basis for concluding that it has met its burden of segregating and releasing all non-exempt material in WIF Doc 2. In the absence of contrary evidence, such as inconsistencies in the *Vaughn* index, contradictory affidavits, or obvious over-redaction, AFL's generalized suspicions are insufficient

to overcome the presumption of administrative regularity. *See SafeCard*, 926 F.2d at 1200 ("Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims[.]'" (internal citation omitted)). Accordingly, under the standards established by *Mead Data*, *Sussman*, *Johnson*, and *Loving*, the Court concludes that DOJ has conducted an adequate segregability analysis of WIF Doc 2 and fully discharged its obligations under 5 U.S.C. § 552(b).

## V.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 25) is **GRANTED IN PART AND DENIED IN PART** and Plaintiff's Cross-Motion for Summary Judgment (ECF No. 27) is **GRANTED IN PART AND DENIED IN PART**. The request to recommend a downward variance (WIF Doc 2) can be withheld in its entirety pursuant to FOIA Exemptions 5 and 7(C). The PSR (WIF Doc 4) cannot be withheld in its entirety, and DOJ must conduct a thorough segregability analysis to justify the application of specific FOIA exemptions to particular portions of the PSR, while also fulfilling its obligation to disclose all reasonably segregable information and considering any content that has already been made publicly available. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  September 26, 2025                                  RUDOLPH CONTRERAS
                                                           United States District Judge